**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CLASS ACTION CASE NO. 16-CV-23409-GAYLES/TURNOFF**

STEVEN MICHAEL COX, individually and
on behalf of those similarly situated,

        Plaintiff,

vs.

PORSCHE FINANCIAL SERVICES, INC.,
PORSCHE LEASING LTD., and
PORSCHE CARS NORTH AMERICA, INC.,

        Defendants.

_____/

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

      Pursuant to Federal Rule of Civil Procedure 23, Plaintiff moves for class certification of his claims against Defendants Porsche Financial Services, Inc. (d/b/a Bentley Financial Services and Lamborghini Financial Services) and Porsche Leasing Ltd. (together "PFS")[1] and Porsche Cars North America, Inc. ("PCNA") under the Consumer Leasing Act, 15 U.S.C. §§ 1667 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, and Florida common law.  All Defendants are referred to as "Porsche."  Plaintiff will file the exhibits hereto separately.

---

[1] "Porsche Leasing Limited is just a titling trust. Porsche Leasing is Porsche Financial Services, so it's the same company." Ex. E, Supena Dep. at 61:21-25.

## I.      INTRODUCTION

This putative class action seeks to remedy Porsche's unlawful leasing practices of inflating its profit by "swallowing" its lessees' equity in their trade-in vehicles on the face of their standard form PORSCHE® leases. A consumer's "trade-in value [is] 'swallowed'" by a lessor's failure "to list the value of a consumer's trade-in vehicle in a contract" and "credit the consumer with the value of the trade-in vehicle." *Gross v. Spitzer Buick Co.*, 1998 WL 2027611, *1-6 (Ohio Com. Pl. Dec. 22, 1998) (concluding Buick's practice of "swallowing" trade-ins was unfair and deceptive, awarding damages to consumer, and enjoining the predatory practice). Here, on the face of Plaintiff's standard form lease, Porsche: (1) failed to disclose the $25,000 he was "allowed" in exchange for his trade-in, and (2) inflated the total cost of his lease by failing to use his trade-in equity[2] like a downpayment—termed a "capitalized cost reduction." *See* Regulation M, 12 C.F.R. § 213, Supp. I (Official Staff Commentary) ("A capitalized cost reduction is a payment in the nature of a downpayment on the leased property that reduces the amount to be capitalized over the term of the lease.").

Porsche's failure to apply Plaintiff's *undisclosed* $25,000 trade-in allowance as a "capitalized cost reduction" inflated his total lease cost—and Porsche's profit—in two ways. First, Porsche applied its "rent charge" (the equivalent of interest charges) to the entire value of the leased vehicle unreduced by the trade-in, which inflated the total "rent charge" owed by Plaintiff. Second, Porsche charged Florida sales tax on the entire value of the leased vehicle unreduced by Plaintiff's trade-in, effectively collecting an unlawful tax on the value of Plaintiff's trade-in vehicle. These practices violate federal and Florida law, and resulted in overcharges of

---

[2] Trade-in "equity" means the agreed-upon value of the consumer's trade-in vehicle, less the amount of any lien on the trade-in (which results in the "net" trade-in allowance). Like a homeowner, a consumer may have "positive" or "negative" equity in their trade-in.

$3,970.93 on Plaintiff's PORSCHE® lease. *See* Ex. J, Yerkes Dec., p. 7.

| PORSCHE® Lease Terms | Correct Lease | "Swallowed" Lease |
|---|---|---|
| Gross Capitalized Cost | $64,935.00 | $64,935.00 |
| Capitalized Cost Reduction | **$25,000.00** | **N/A** |
| Adjusted Capitalized Cost | $39,935.00 | $64,935.00 |
| Rent Charge | $7,506.25 | $9,837.48 |
| Florida Sales Tax | $412.30 | $2,052.00 |
| **Total Cost of 36-Month Lease** | **$32,568.37** | **$36,539.30** |

Plaintiff now seeks to certify two classes of Florida consumers who similarly had their trade-in equity "swallowed," resulting in both (1) inaccurate disclosures and (2) overcharges of interest and sales tax on the face of their form PORSCHE® leases. "Simply stated, this case presents the quintessential contract claim for classwide treatment. 'It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.'" *Bowe v. Pub. Storage*, 318 F.R.D. 160, 183 (S.D. Fla. 2015) (citation omitted). The legality of Porsche's practices can be litigated uniformly on behalf of all class members, and damages can be calculated by applying a common methodology to Porsche's form contracts.

## II.   FACTS

### A.   Porsche profits from the scheme.

A key factor in calculating the total cost of a PORSCHE® lease is the leased vehicle's "adjusted capitalized cost."[3] Porsche computes the adjusted capitalized cost by reducing the "gross capitalized cost" (the leased vehicle's price) by the amount of any "capitalized cost reductions." Ex. A, Cox Lease Agreement (§8A – §8B = §8C). Per the express boilerplate terms of the form PORSCHE® lease, a "capitalized cost reduction" includes any "net trade-in allowance." *Id.* at §8B.

The adjusted capitalized cost is a key factor because it affects the amount of the "rent

---

[3] Other important factors are the "money factor" (interest rate) and the leased vehicle's "residual value" at lease end.  But they are not at issue here.

Page **2**

charge" (profit to Porsche and dealer), which is the interest charged on the PORSCHE® lease.[4] Ex. D, Harris Dep. at 93:8-95:23; 97:18-21. The higher the adjusted capitalized cost, the higher the rent charge. *Id.* at 97:18-21. The higher the rent charge, the higher the lease payment. *Id.* at 101:1-3. The higher the lease payment, the higher the sales tax charge. *Id.* at 100:16-25. Conversely, a capitalized cost reduction reduces the rent charge and the monthly or single payment[5] and, correspondingly, the tax burden. *Id.* at 102:17-21. In other words, if a trade-in allowance is *not* properly applied as a capitalized cost reduction, the rent charge and the base monthly or single payment will be inflated, and the consumer pays taxes as if there were no trade-in. *Id.* at 103:6-10. Thus, Porsche's failure to apply a consumer's trade-in equity as a capitalized cost reduction will increase the rent and sales tax charges and, therefore, the total payment amount of any given PORSCHE® lease.

### B.  Porsche deceives Mr. Cox.

Steven Cox is a retired UPS driver, and since his retirement he has developed software for grade schools, worked for the Naples Chamber of Commerce, and moonlighted at the Apple Store. Ex. C, Cox Dep. at 24:3-27:14. In March 2015, Mr. Cox leased a Porsche Cayman with a gross capitalized cost of $64,935.00 from Porsche of Fort Myers. *Id.* at 47:13-18; Ex. A, Lease §8A. Mr. Cox paid his PORSCHE® lease up-front with a $25,000 trade-in vehicle—which he owned outright—and a $11,539.30 check. Ex. D, Harris Dep. at 104:22-105:9; Ex. C, Cox Dep. at 141:2-7. Mr. Cox noticed that the line for the "net trade-in allowance" in Section 7B(1) was

---

[4] The rent charge is calculated by adding the adjusted capitalized cost to the "residual value" of the leased vehicle, and multiplying the sum by the money factor (the interest rate). Ex. D, Harris Dep. at 102:5-8.

[5] There is no material difference between a monthly-payment and single-payment lease. Porsche uses the same standard form documents and the same formula for calculating the total payment amounts for both types of leases.  The only difference—albeit immaterial here—is that a "single-payment" lessee pays all the monthly payments up-front, whereas a "monthly-payment" lessee pays in monthly (e.g. 36 monthly payments over a 36-month lease).

marked "N/A," but after reminding the sales manager of his trade-in, Mr. Cox became "satisfied that they somehow combined [his] down payment and [his] trade-in allowance into that [final] number" of $36,539.30 in Section 7B(4) of his PORSCHE® lease. *Id.* at 83:6-25, 150:9-21; Ex. A, Lease §7B. When he signed his PORSCHE® lease, Mr. Cox was "convinced that the terms were right, that [his] trade-in was applied, and that the gross price was right. So [he] assumed the math was correct, and [he] accepted the lease." *Id.* at 148:9-14.

### C.   Mr. Cox discovers the scheme.

Weeks later, Mr. Cox had a conversation with his neighbor—a former car dealer—who reviewed his PORSCHE® lease and noticed the rent charge was high. Ex. C, Cox Dep. at pp. 94:3-96:19. Mr. Cox became suspicious; he reviewed his PORSCHE® lease again and noticed that the sales tax charge of $2,052.00 in Section 8K also seemed high. *Id.* at 86:19-89:12, 99:19-101:10. After months of research and an attorney consultation, Mr. Cox determined: (1) that his trade-in should have been applied as a capitalized cost reduction for "a much lower sales tax number," because Florida law requires "the trade-in [to be] used to reduce the sales tax burden," *id.* at 101:19-102:6, 154:8-15, and (2) that Porsche had "swallowed his trade" and inflated his rent charge, because "a trade-in allowance should be deducted from the capitalization" but "[his] trade-in allowance was not used to reduce the capitalized cost of the car," *id.* at 104:21-105:10, 124:18-125:24, 152:6-14.

### D.   Porsche controls the scheme.

Both PCNA and PFS have standard form agreements with Porsche dealers that are non-negotiable and set forth standards of operation and guidelines for their dealers. Ex. D, Harris Dep. at 31:16-32:19, 52:4-53:4, 63:24-66:16; *see also* Ex. F, Dealer Sales and Service Agreement; Ex. G, Dealer Operating Standards; Ex. H, PFS Dealer Agreement. "If we [dealers]

want money from [PFS], we will follow their guidelines ... if we want to get paid." Ex. D, Harris Dep. at 64:15-25. PFS provides each dealer with boilerplate origination forms that include form PORSCHE® credit applications, lease agreements, dealer worksheets, and "other type[s] of forms that we need for funding." Ex. E, Supena Dep. at 21:10-22:10; 94:7-95:5; Ex. D, Harris Dep. at 68:16-24; 81:7-18. PFS "warrants" that its forms, "if completed accurately by Dealer, comply with Federal law and the law of the State where Dealer is located." Ex. F, PFS's Dealer Agreement at §16. PFS also gives its dealers the "PFS Fair Lending Policy," which is incorporated into its agreements with its dealers. *Id.* at 2436; Harris 87:9-88:13.

PFS is the "lessor" in its form PORSCHE® leases. Ex. I, PFS Credit Underwriting Handbook at 2045; Ex. D, Harris Dep. at 67:14-17. Each form PORSCHE® lease expressly provides that PFS "may be deemed an additional lessor under the Consumer Leasing Act," Lease § 24(E), which is Part E of the Truth in Lending Act. PFS thus must comply with these consumer protection statutes: "When the lease agreement or the retail installment contract comes in for funding we ensure that it is compliant." Ex. E, Supena Dep. at 14:17-15:8; 31:7-11. PFS ensures compliance by "discounting the deal" with "review rules" and a "contract processing handbook":

> In our loan origination system we have what they call review rules, and those ensure that the money or the amount financed and all that, the [annual percentage rate], the rent charges, the interest charges are all within a tolerance.
>
> Also, I have a contract processing handbook that explains, you know, what to look for in a contract; if there's something missing, what the credit service rep needs to do if there is a blank space on a contract, and they follow the contract processing handbook as well.

Ex. E, Supena Dep. at 14:17-15:19, 31:7-24.

PCNA, for its part, sets the tax policies and procedures. Ex. M, Interrogatory Answer #10. "Upon funding, PFS applies [the] procedures developed by the PCNA Tax Department to determine that the correct rate has been applied and that the calculations on the [PORSCHE®] lease

are accurate." *Id.* "[PFS] as vehicle lessor (owner) is required to pay all state imposed sales or sales use tax." Ex. I, PFS Credit Underwriting Handbook at 2045. PFS cross-trains its "funders" in its Credit Services Department to comply with each state's tax law—"like if the sales tax is up front as opposed to monthly." Ex. E, Supena Dep. at 16:10-18:14. PFS does so because each state may require different documentation and have different tax laws. *Id.* at 18:5-18.

As the lessor, PFS must comply with federal and state consumer protection and tax laws governing consumer leases, yet PFS dubiously claims it does not know (let alone verify) whether its PORSCHE® leases, in fact, contain legally compliant disclosures regarding trade-in allowances, properly applied capitalized cost reductions, and properly calculated taxes. Instead, PFS asserts it is its "dealer's responsibility"—even though PFS purportedly provides no specific requirement for how its dealers should document and apply a lessee's trade-in allowance in any given PORSCHE® lease. *Id.* at 18:19-21, 77:4-80:25, 85:3-87:4, 92:14-17.

## III.   ARGUMENT

Plaintiff's consumer fraud claims under the Consumer Leasing Act (Part E of the Truth in Lending Act (TILA)), the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and Florida common law are ideal for class certification under Rule 23(b)(2) and (b)(3). Plaintiff seeks to remedy Porsche's uniform practice of "swallowing" its lessees' trade-in equity in the same way, in the same standard form PORSCHE® leases, with the same material terms.  Courts have routinely granted class certification in similar actions challenging leasing and financing practices in standard form automobile contracts.[6]

---

[6] *See, e.g.*, *LeFoll v. Key Hyundai of Manchester, LLC*, 2010 WL 1840220, *1 (D. Conn. May 6, 2010) (certifying TILA claim challenging practices in "form [contract] supplied to [dealer] by [finance company]"); *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 393-95 (D. Colo. 2010) (certifying TILA claims challenging practices in form finance contracts); *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 325-31 (S.D. Ohio 2009) (certifying TILA and state's

### A.   Legal Standard.

To certify a class action, a plaintiff must satisfy all the criteria in Rule 23(a) and one of the categories in Rule 23(b).  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Doing so entitles the plaintiff to pursue his claims as a class action, *id.*, provided his proposed classes are "'adequately defined and clearly ascertainable[,]'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citation omitted). Plaintiff seeks to certify each class under both Rule 23(b)(2) and (b)(3).

### B.   The Classes satisfy Rule 23(a).

#### 1.   The Classes are adequately defined and clearly ascertainable.

Ascertainability requires a showing of "objective criteria" for identifying class members through a "manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. App'x 782, 787 (11th Cir. 2014) (citations omitted). Plaintiff seeks to certify two Classes:

---

FDUTPA claims challenging practices in form contracts); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 575-81 (M.D. Fla. 2006) (certifying TILA, unjust enrichment, and FDUTPA claims challenging practices in "standard form" finance contracts); *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 213-14, 220 (S.D. Ohio 2003) (certifying TILA and state's FDUTPA claims challenging practices in form finance contracts); *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313, 317, 319-20 (W.D. Mo. 1997) (certifying TILA claim challenging practices in "form" contracts); *Chandler v. Sw. Jeep–Eagle, Inc.*, 162 F.R.D. 302, 304, 312 (N.D. Ill. 1995) (certifying TILA and state's FDUTPA claims challenging practices in form finance contracts); *Simon v. World Omni Leasing, Inc.*, 146 F.R.D. 197, 198-200 (S.D. Ala. 1992) (certifying TILA claim challenging practices related to form lease contracts); *Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 130-34 (E.D. Ky. 1981) (certifying TILA claims challenging practices related to "similar or identical" form contracts); *Yazzie v. Gurley Motor Co.*, 2015 WL 10818834, at *1-10 (D.N.M. Oct. 30, 2015) (certifying TILA and UCC claims challenging practices related to "standard form loan agreements"); *Bor Pha v. Yia Yang*, 2014 WL 654559, at *1-3 (E.D. Cal. Feb. 19, 2014) (certifying state's FDUTPA claim challenging practices in "standard form contract[s]").

**Inaccurate Disclosure Class:** Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendants and, as part of the transaction, traded in a vehicle with a positive monetary value that was not assigned a positive Net Trade-in Allowance. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.

**Overcharge Class:** Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendants and, as part of the transaction, traded in a vehicle with a positive monetary value that was not properly credited as a Capitalized Cost Reduction. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.

(ECF No. 1 ¶ 82). These Classes are "adequately defined" because they consist only of Florida consumers: (i) who executed a PORSCHE® lease that is currently outstanding or terminated on or after August 8, 2012; (ii) traded in a vehicle(s) in which they had positive equity as part of the transaction; but (iii) the "Net Trade-in Allowance" is Section 7B(1) was zero, "N/A," or was blank (Inaccurate Disclosure Class); and/or (iv) their trade-in equity was not properly applied as a "Capitalized Cost Reduction" in Section 8B of the PORSCHE® lease (Overcharge Class). If a consumer meets these objective criteria, they are a class member and entitled to statutory damages (Inaccurate Disclosure Class), actual damages (Overcharge Class), or both.

Each class is ascertainable because its class members can be identified by reference to objective criteria. Porsche maintains control of (1) records that identify each person who leased a Porsche in Florida, (2) a copy of the PORSCHE® lease for the transaction, (3) a record of whether the lease involved a trade-in with positive equity,[7] and (4) whether each lease terminated within the class period or is still outstanding. *Cf. Fielder*, 175 F.R.D. at 317-20 (certifying an "official fee overcharge class" in action alleging that "form" auto finance contracts assigned to finance

---

[7] For example, a comparison of Plaintiff's lease agreement with any one of several records, such as his lease "recap" or the "washout sheet" for his transaction (all produced by Porsche), establishes his membership in both Classes. Ex. N, Lease Recap and Washout Sheet (recording Plaintiff's "swallowed" $25,000 trade in allowance); Ex. D, Harris Dep. at 112:4-116:12.

company violated TILA and state law).

## 2. Numerosity is satisfied under Rule 23(a)(1).

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable."  Generally, a class size of "more than forty" is sufficient. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, there are at least 112 confirmed class members; furthermore, an additional 1206 leases are, on their face, consistent with the Inaccurate Disclosure Class's definition, and an additional 267 leases are, on their face, consistent with the Overcharge Class's definition.  Ex. K, Weil Declaration. But there may be more.  Despite being ordered to produce all 7,720 leases from the class period, (ECF. No. 78), Porsche has withheld 640 leases, without any explanation. Ex. K, Weil Declaration.

## 3. Commonality is satisfied under Rule 23(a)(2).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 391 (2011). Commonality "is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'" *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (citation omitted). Commonality has also been routinely satisfied in actions against auto dealers and finance companies involving standard form lease or finance contracts.[8] *See, e.g.*, *Violette*, 214 F.R.D. at 213-14, 220 (certifying TILA and state consumer claims where common questions included whether disclosures and various fees were unlawful in form contracts);

---

[8] "When the [TILA] complaint alleges that there has been an inadequate disclosure of some required information or some other defect in the procedures or forms utilized, common questions of law and fact are found in the standardized conduct of the defendant in allegedly failing to meet those statutory requirements." 7A CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1763 (3d ed. 2014).

*LeFoll*, 2010 WL 1840220 at *1 (certifying TILA claim where common questions included whether the form contract supplied to the dealer by the finance company made the disclosures required under TILA). *See also* Section III, *supra*, n. 6.

Porsche's "standardized course of conduct" of incorrectly processing form Porsche® leases that share the same terms "affects all class members," causing measurable economic damages. *In re Checking*, 275 F.R.D. at 673 (citation omitted). Common questions of whether Porsche's conduct is unlawful "'generate[ ] common *answers* apt to drive the resolution of the litigation.'" *Dukes*, 564 U.S. at 350 (citation omitted). For example:

- Did Porsche disclose the class members' trade-in equity as "Net Trade-in Allowances" in Section 7B(1) of their Porsche® leases?
- Did Porsche apply the class members' trade-in equity as "Capitalized Cost Reductions" in Section 8B of their Porsche® leases?
- Does Porsche's practice of failing to disclose the class members' "Net Trade-in Allowances" on the face of their Porsche® leases violate the CLA, Regulation M, and FDUTPA?
- Does Porsche's practice of failing to apply the class members' trade-in equity as "Capitalized Cost Reductions" violate the CLA, Regulation M, FDUTPA, and Florida common law?
- Did Porsche charge the class members unlawful amounts of Florida sales tax?
- Do Porsche's practices constitute a material breach of the express terms of its form Porsche® leases under Florida law?
- Was Porsche negligent in establishing and implementing policies and procedures for calculating, charging, and collecting the Florida sales tax due on the class members' Porsche® leases?

These common questions are more than "sufficient to satisfy the low hurdle of Rule 23(a)(2)."

*Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1356 (11th Cir. 2009).

### 4.    Typicality is satisfied under Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern

or practice and are based on the same legal theory.'" *Williams*, 568 F.3d at 1356-57 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984)). The typicality requirement is routinely met in actions challenging auto dealers and finance companies' practices in standard form lease or finance contracts. *See, e.g.*, *LeFoll*, 2010 WL 1840220 at *1 (typicality met where "the alleged unlawful conduct was the same for [plaintiff] and the class members, regardless of the varying facts which underlie the individual claims"). *See also supra* Section III. The same is true here. No material variation exists between Plaintiff's claims and the absent class members' claims. Plaintiff and every class member executed the same form PORSCHE® lease with the same material terms and, as part of the transaction, traded in a vehicle in which they had positive equity. Porsche, for its part, "swallowed" Plaintiff and each class member's trade-in equity in the same way. Like his fellow class members, Porsche failed to accurately disclose Plaintiff's trade-in equity as a "Net Trade-in Allowance" in Section 7B(1), and also failed to apply it as a "Capitalized Cost Reduction" in Section 8B. Plaintiff's claims satisfy typicality. *Williams*, 568 F.3d at 1356-57.

### 5.      Adequacy of representation is satisfied under Rule 23(a)(4).

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." A plaintiff is adequate if he "possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class." *Sanchez-Knutson v. Ford Motor Co*., 310 F.R.D. 529, 540 (S.D. Fla. 2015). Here, Plaintiff's testimony shows he has and will continue to represent the interests' of the proposed classes, he does not seek any preferential treatment, and he has no interests or conflicts adverse to the Classes. Plaintiff's counsel is

likewise adequate to represent the Classes.[9] Plaintiff's counsel has attached declarations about their experience with class actions, consumer fraud cases, and complex litigation. *See* Ex. K, Weil Declaration; Ex. L, Lutz Declaration. Like Plaintiff, counsel is dedicated to prosecuting this action and fulfilling their duties to the classes.

### C.   The Classes should be certified under Rule 23(b)(3).

Rule 23(b)(3) requires a plaintiff to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy."

### 1.   Common questions law and fact predominate.

"Common questions predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). "'[I]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions.'" *Id.* (citation omitted). Courts frequently find the predominance requirement has been satisfied in actions against auto dealers or finance companies involving "inadequate disclosures" or a "common scheme to deceive or defraud" consumers in "standard form" contracts. *Veal*, 236 F.R.D. at 575-81 (certifying class action against owner of eleven dealers). *See, e.g.*, *Ingram*, 90 F.R.D. at 130 (predominance met where "the primary issue" of whether substantially similar contracts violated TILA "dwarf[ed] the other, individual questions"). *See* Section III, *supra*, n. 6.

---

[9] "[T]he adequacy of class counsel is presumed" absent contrary evidence. *Sanchez-Knutson*, 310 F.R.D. at 540.

Here, predominance is satisfied because the prevalence of common, class-wide issues dwarf any individual issues. Porsche's liability arises from its uniform treatment of class members, who have identical form PORSCHE® leases with the same identical terms. The material facts driving the question of Porsche's liability, therefore, are identical for each of the Classes' claims, eliminating any need to "introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims[.]" *Klay*, 382 F.3d at 1255. Common questions easily predominate over individual issues.

i.   The Inadequate Disclosure Class's Claims

Plaintiff seeks to certify a class of consumers who received inaccurate disclosures of their "Net Trade-in Allowances" and Florida sales tax charges on the face of their PORSCHE® lease, in violation of the Consumer Leasing Act (CLA) and Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Whether Porsche's inaccurate disclosures were unlawful are common issues that predominate.

The directive of the Consumer Leasing Act (CLA), 15 U.S.C. §1601(b), a chapter of the Truth in Lending Act (TILA), is "to assure a meaningful disclosure" of lease terms to enable consumers to compare alternatives "who are viewed as not being on an equal footing with lenders." *Taylor v. United Mgmt., Inc.*, 51 F. Supp. 2d 1212, 1216 (D.N.M. 1999). Specifically, the CLA requires lessor to "set[ ] out **accurately** and in a clear and conspicuous manner ... [t]he amount of any payment by the lessee required at the inception of the lease" and "[t]he amount paid or payable by the lessee for ... **taxes**." 15 U.S.C. § 1667a(2)-(3) (emphasis added). Its implementing regulation, Regulation M, "fill[s] in the statutory gaps of the CLA." *Myers v. Hexagon Co.*, 54 F. Supp. 2d 742, 754 (E.D. Tenn. 1998). Under Regulation M, the lessor "shall itemize each component by type and amount, including any ... **capitalized cost reduction**; and in

**motor-vehicle leases**, shall itemize how the amount due will be paid, by type and amount, including **any net trade-in allowance**[.]" 12 C.F.R. § 213.4(b) (emphasis added). Any CLA violation is a *per se* FDUTPA violation. *Williams v. Delray Auto Mall, Inc.*, 916 F. Supp. 2d 1294, 1300 (S.D. Fla. 2013).

Here, Plaintiff's CLA and FDUTPA claims are "based on two contentions: 1) [Porsche] failed to accurately disclose the trade-in allowance, and 2) [Porsche] failed to accurately disclose the total sales/use taxes during the lease term." *Taylor*, 51 F. Supp. 2d at 1215 (granting summary judgment for plaintiff on CLA and state's statutory consumer claims). "[T]he use of the abbreviation 'N.A.' to disclose the net trade-in value . . . is a clear violation of the [CLA], particularly [Regulation M]." *Myers*, 54 F. Supp. 2d at 755. "These chief allegations are properly amenable to class treatment, due to predominant common questions of law and fact, because the existence of any statutory violations may be determined by examining the face of the records provided by [Porsche], with regard to the [ ] potentially subject transactions identified through discovery." *Lewis v. Robinson Ford Sales, Inc*., 67 Cal. Rptr. 3d 347, 354 (Cal. Ct. App. 2007) (certifying California law claims for inaccurate disclosures in form auto finance contracts).

Plaintiff seeks and the CLA provides for statutory damages against "any lessor" who fails to comply with the disclosure requirements under § 1667a. 15 U.S.C. § 1640(a). Plaintiff also seeks injunctive relief under the CLA and FDUTPA. Common issues easily predominate because there are virtually no individualized issues inherent in litigating the Class's claims for statutory violations appearing on the face of each PORSCHE® lease.

### ii.     The Overcharge Class's FDUTPA claims

Plaintiff also seeks to certify a class of consumers who were overcharged for their PORSCHE® leases in violation of FDUTPA (Count 4). Porsche failed to properly apply the class

members' trade-in equity to reduce the "capitalized cost" of their leased vehicle, resulting in unlawfully inflated "rent charges" and Florida sales tax charges. Porsche's failure violated FDUTPA, which broadly declares unlawful any unfair or deceptive acts or practices committed in the conduct of any trade or commerce and provides for actual damages. Fla. Stat. §501.211(2)

"A consumer's claim 'for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *Bowe*, 318 F.R.D. at 181 (citation omitted). An "unfair" practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citations omitted). A "deceptive" practice is one that would "'likely [ ] deceive a consumer acting reasonably in the same circumstances,'" which is an "objective test." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-84 (11th Cir. 2016) (citation omitted).

Courts "must liberally construe FDUPTA[.]" *Lombardo v. Johnson & Johnson Consumer Comp., Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015). "Courts have regarded FDUTPA as 'extremely broad' and the statute is designed to protect the consuming public from those who engage in deceptive or unfair trade practices[.]" *Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150, 1157 (S.D. Fla. 2015). A FDUTPA violation may also be based upon "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c). Other courts have already found that practices virtually identical to Porsche's practices are unfair and deceptive under such statutes.[10]

---

[10] *See, e.g.*, *Taylor*, 51 F. Supp. 2d at 1215-17 (summary judgment for plaintiff on claims that failure to disclose trade-in violated the CLA and state consumer protection law); *Myers*, 54 F. Supp. 2d at 749-57 (rendering judgment for plaintiffs under the CLA and state's unfair and

Here, Porsche—using its form PORSCHE® lease—has employed a "common scheme to deceive and defraud" to inflate its profit by failing to properly apply each class member's trade-in equity to reduce the leased vehicle's "capitalized cost." *Cf. Bowe*, 318 F.R.D. at 181 (where each contract had "the same text in its contracts," "the allegedly deceptive acts [were] the same as to each class member"); *Veal*, 236 F.R.D. at 575-81 (certifying TILA and FDUTPA claims against the owner of eleven dealerships for disclosure violations in form installment sales contracts). As a result, Porsche charged each class member inflated "rent charges" and Florida sales tax charges. *See* Fla. Stat. § 212.09(1); Fla. Admin. Code, Rule 12A-1.007(1)(b)1 ("[a]ny trade-in allowance . . .shall be excluded" from sales tax calculation). On these facts, the first FDUTPA element is "amenable to classwide resolution" because the factfinder must only determine whether Porsche's common scheme "was likely to deceive a consumer acting reasonably." *Carriuolo*, 823 F.3d at 983-84.

The causation and damages elements are likewise amenable to classwide resolution because each class member "'need not show actual reliance on the representation or omission at issue,'" and  "the mental state of each class member is irrelevant." *Id.* at 985 (citation omitted). "The Eleventh Circuit has held that [class representatives] do not need to present evidence that each potential class member was actually harmed by a defendant's conduct, and that [class representatives] need only show that a reasonable consumer would have been harmed by defendant's conduct, an inquiry that lends itself more easily to class certification especially where, as here, [Porsche's] conduct is the same as to all class members." *Bowe*, 318 F.R.D. at 182 (citing *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)).

---

deceptive trade practices act, where the dealer disclosed their $7,000 trade-in equity as "N/A" and did not apply it as a capitalized cost reduction).

Because the elements of each class member's FDUTPA claim can be established through common proof and legal theories, whether Porsche's practices violated FDUTPA and harmed each class member are common questions that predominate over any individual issues.

### iii.   The Overcharge Class's Common Law Claims

Plaintiff also seeks to certify a class of consumers who were overcharged in their form PORSCHE® leases in violation of Florida common law.  Plaintiff's claims are for breaches of contract (Count 5) and the covenant of good faith and fair dealing (Count 6), unjust enrichment (Count 8), and negligence (Count 9).

Breach of Contract. A breach of contract claim requires: (1) a valid contract; (2) a material breach; and (3) damages. *Bowe*, 318 F.R.D. at 183. Here, Section 8B of the PORSCHE® lease states that a "Capitalized Cost Reduction" is "[t]he amount of any Net Trade-in Allowance ... you pay that reduces the Gross Capitalized Cost." Ex. A, Lease §8B. If the overcharges at issue were material breaches of contract, "then it would be a breach as to the whole class." *Bowe*, 318 F.R.D. at 183. "Thus, determining whether or not [Porsche] did breach the contracts, and whether or not class members are entitled to damages as the result of any breach, can be established based on the same evidence that pertains to the entire class." *Id.*

Unjust Enrichment. An unjust enrichment claim requires: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Id.* at 183-84. "Other courts in this district commonly certify claims of unjust enrichment for class treatment in cases like this one where defendant acted in the same manner toward every class member." *Id.* at 184. Like the breach of contract claim, each element of the unjust enrichment claim will be established by common, class-wide

proof, meaning that common issues predominate over any individualized inquiry. *See Veal*, 236

F.R.D. at 582-83 (certifying unjust enrichment claim against owner of multiple dealerships).

Negligence. A negligence claim requires a duty, breach, causation, and damages.
*Encarnacion v. Lifemark Hospitals of Fla.*, 211 So. 3d 275, 278-79 (Fla. 3d DCA 2017). A
negligence claim is amenable to certification where it involves alleged tax overcharges due to
corporate policy.[11] Here, Porsche has a corporate policy of systematically overcharging Florida
sales tax on PORSCHE® leases involving trade-ins with positive equity. Specifically, Porsche
owed the Class a duty of reasonable care—which it breached—in establishing and implementing
lawful tax policies, procedures, and practices. "[W]here corporate policies 'constitute the very
heart of the [class members'] ... claims,' as they do here, common issues will predominate
because those policies 'would necessarily have to be re-proven by every [class member].'"
*Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 669 (M.D. Fla. 2014).

### iv. Actual Damages Are Appropriate for Class Treatment

The Overcharge Class seeks "actual damages" for Porsche's failure to properly reduce
the "capitalized cost" of their PORSCHE® leases. "Recognition that individual damages
calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal."
*Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (citation omitted). Here, "FDUTPA damages
are measured according to 'the difference in the market value of the product or service in the
condition in which it was delivered and its market value in the condition in which it should have
been delivered according to the contract of the parties.'" *Carriuolo*, 823 F.3d at 986 (citation

---

[11] *See Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 663 (M.D. Fla. 2014) (certifying claim
that Papa Johns negligently overcharged Florida sales tax on its "delivery fees"); *cf. Bugliaro v.
BJ's Wholesale Club, Inc.*, 2015-006256-CA-01, p.1 (11th Cir. 2017) (certifying FDUTPA claim
that BJ's improperly overcharged Florida sales tax "on the full, undiscounted price of products
purchased with a discount funded in part by BJ's").

omitted). This measure of damages is indistinguishable from the actual damages also available to the class members if they prevail on their common law claims. *See Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984) (holding that FDUTPA's "actual damages" are the same as those available at common law).

For certification, the "predominance inquiry requires that the alleged damages emanating from the injury be 'measurable on a class-wide basis through use of a common methodology.'" *Sanchez-Knutson*, 310 F.R.D. at 538.  Plaintiff has attached the declaration of Rustin T. Yerkes to demonstrate that a "common methodology"—"consistent with its liability case"—can be used to efficiently calculate each class members' actual damages under Florida law. *Comcast*, 569 U.S. at 35 (quotations omitted). Using only information available on the face of each form PORSCHE® lease and the class members' trade-in allowances, each lease can be recalculated to properly apply the class members' trade-in allowances as capitalized cost reductions. Ex. J, Yerkes Dec. This methodology measures the difference in the inflated amounts paid by the class members and the amounts they *should have paid* had their lease been lawfully calculated.

### 2.      A class action is superior to fractured litigation.

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." "The focus of the superiority analysis is on the advantages of the class action mechanism over various other forms of litigation available to the class members. Furthermore, the superiority analysis does not call for an assessment of whether a class action will create significant management problems; rather, the inquiry is whether a class action will create more management problems than any of the alternative forms of litigation." *Bowe*, 318 F.R.D. at 184 (citation omitted). The predominance of common issues here makes the proposed classes imminently manageable and superior to fractured litigation.

Furthermore, the class members' interests in individually controlling the prosecution of separate actions is low given that each class member has suffered modest amounts of damages, which do not justify protracted litigation against multiple sophisticated leasing entities. Fed. R. Civ. P. 23(b)(3).

### D.     The Classes should be certified as injunctive classes under Rule 23(b)(2).

Plaintiff also requests that each class be certified under Rule 23(b)(2) for injunctive and declaratory relief. Rule 23(b)(2) allows for such certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "'The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted.'" *Sanchez-Knutson*, 310 F.R.D. at 541 (quoting *Dukes*, 564 U.S. at 338).

Here, Porsche failed to make the disclosures to each Inadequate Disclosure Class member that were required under federal and Florida law. Porsche also unlawfully inflated the total lease payments due for each Overcharge Class member. These facts support certification under Rule 23(b)(2) because whether these activities were lawful, or whether they should be declared unlawful and enjoined, will be the same for each class member. Both Classes should be certified under Rule 23(b)(2) because "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

### CONCLUSION

This case involving form PORSCHE® leases is perfectly suited for class treatment. Plaintiff respectfully requests that the Court certify the Classes defined above, appoint named Plaintiff as Class Representative, and appoint his attorneys Ronald P. Weil and Mark A. Schweikert (WEIL SNYDER SCHWEIKERT & RAVINDRAN, P.A.) and Hirlye R. "Ryan" Lutz, F. Jerome Tapley, and

Adam W. Pittman (CORY WATSON, P.C.) as class counsel pursuant to Fed. R. Civ. P. 23(g)(1).

Respectfully submitted,

By: *s/ Mark A. Schweikert*
Ronald P. Weil (FBN 169966)
rweil@weilquaranta.net
Mark A. Schweikert (FBN 70555)
mschweikert@weilquaranta.net
**WEIL SNYDER SCHWEIKERT RAVINDRAN, P.A.**
201 South Biscayne Boulevard, Suite 850
Miami, Florida 33131
T: (305) 372-5352
F: (305) 372-5355

F. Jerome Tapley (FBN 22066)
jtapley@corywatson.com
Hirlye R. Lutz, III (*Pro Hac Vice*)
rultz@corywatson.com
Adam W. Pittman (*Pro Hac Vice*)
apittman@corywatson.com
**CORY WATSON, P.C.**
2131 Magnolia Avenue
Birmingham, Alabama 35205
T: (205) 328-2200
F: (205) 324-7896

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 20, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF filing system. I further certify that the foregoing document was served on all counsel of record via transmission of the Notice of Electronic Filing generated by the Court's CM/ECF system.

*s/ Mark A. Schweikert*
Mark A. Schweikert