UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-CV-23409-GAYLES/LOUIS

STEVEN MICHAEL COX, individually and
on behalf of those similarly situated,

               Plaintiff,

vs.

PORSCHE FINANCIAL SERVICES, INC.,
PORSCHE LEASING LTD., and
PORSCHE CARS NORTH AMERICA, INC.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendants' Motion for Summary Judgment, filed on November 28, 2017 (ECF No. 109). The motion was referred to the undersigned United States Magistrate Judge by the Honorable Darren P. Gayles, United States District Judge, for a Report and Recommendation (ECF No. 148). A hearing was held before the undersigned on July 11, 2018. The Court has carefully reviewed the Parties' submissions and is otherwise duly advised in the premises. Upon consideration, the undersigned **REPORTS AND RECOMMENDS** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiff Steven Michael Cox brings this putative class action against Defendants Porsche Cars North America, Inc. ("Porsche N.A."), Porsche Financial Services, Inc. ("Porsche Financial"), and Porsche Leasing Ltd. ("Porsche Leasing") (ECF No. 1). Plaintiff's allegations stem from a car lease transaction. On March 10, 2015, Plaintiff visited dealership Porsche of Fort Myers, a non-party. None of the Defendants named herein have any ownership interest in the

dealership. Defendant Porsche N.A. is the exclusive importer of Porsche vehicles from Germany into the United States; Porsche Financial is Porsche N.A.'s captive financing company; and Porsche Leasing is a Delaware statutory titling trust.

At the dealership that day, Plaintiff signed a single-payment lease agreement for a 2015 Porsche Cayman for $36,539.30 (ECF No. 135-2, Cox Lease). A single-payment lease requires the lessor to make all of his periodic payments at the same time, up front, in exchange for more favorable financing terms (a lower "buy-rate"). Plaintiff traded in his 2015 Hyundai Genesis for the agreed price of $25,000 and wrote a check for the remaining amount of $11,539.30 (ECF No. 135-4, Cox Dep. at 149:9-15). Plaintiff noticed that the lease form indicated "N/A" on the line "Net Trade-In Allowance." Because the dealer had agreed to give him $25,000 trade-in credit for his 2015 Hyundai Genesis (*Id.* at 83:9-22), Plaintiff asked the dealer where the credit for his trade-in was (ECF No. 135-4, at 150:9-16). The dealer told Plaintiff "it's right there," in the line provided for "Amount to Be Paid in Cash" ($36,539.30) (*Id.*; ECF No. 135-2). Plaintiff left the dealership with the 2015 Porsche Cayman, and made no additional payments to the Porsche of Fort Myers dealership (ECF No. 135-4, at 86:4-5, 17-18).

The standard lease form that Plaintiff executed was provided by Porsche Financial to the dealership for use in its leases. Porsche Financial has an agreement with the dealership, in which Porsche Financial warrants that the preprinted portions of the forms provided to the dealer, if completed accurately by dealer, "comply with Federal law and the law of the State where Dealer is located" (ECF No. 134-12 at 4). As part of the transaction, Plaintiff completed a second form provided by Porsche Financial: a Porsche Credit Application (ECF No. 135-13). The dealer entered the information from Plaintiff's credit form into an online portal that was operated by non-party Dealertrack, which transmitted the data to Porsche Financial (ECF 135-15). The

information transmitted to Porsche Financial by the dealership revealed that Plaintiff had traded in his Hyundai Genesis, but disclosed no value for the net trade-in amount, lienholder, or monthly payment amount in the spaces provided. Plaintiff argues from the evidence that Porsche Financial should have known that he had positive equity in his trade-in vehicle, as the sales manager from Porsche of Fort Myers testified that "if there's no lienholder, there can't be negative equity" (ECF No. 135-10, Trombley Dep. at 163:25-164:3). Porsche Financial approved Plaintiff's credit application, and Plaintiff signed the lease agreement. The dealer thereafter sent Porsche Financial a variety of required documents, which include the signed lease agreement, the dealer worksheet, and Plaintiff's credit application.

Once in receipt of the documents, Porsche Financial reviewed Plaintiff's lease for legal compliance with the Truth-in-Lending Act, which Porsche Financial calls "discounting the deal" (ECF No. 135-8 at 14:9-15:8). Porsche Financial's Contract Process Standards Handbook provides that the process of discounting a deal requires validation of the papers presented for accuracy, completeness, and usage of up-to-date and valid forms (ECF No. 134-3 (SEALED)). Porsche Financial's employees use the handbook's guidelines, and "review rules" to ensure compliance with the Truth-in-Lending-Act before acquiring a lease (ECF No. 135-8 at 15:9-19). Once the deal was "discounted," the dealership assigned the lease to Porsche Leasing, to be serviced by Porsche Financial.[1]

Soon after signing, Plaintiff reviewed the lease agreement with his neighbor, a retired car salesman, who opined that the rent charges were "extremely high;" in fact, he told Plaintiff that "he had never seen a rent charge so high" (ECF No. 135-4, Cox Dep. at 95:3-96:19). Plaintiff began investigating comparable leases, consulted an attorney, and ultimately came to believe that

---

[1] Porsche Leasing is simply a titling trust: "Porsche Leasing is Porsche Financial Services, so it's the same company." (ECF 135-8, Supena Dep. at 61:21-25).

rent charge, sales tax, and the total lease payment were all inflated because the dealership had not applied the value of his trade-in to reduce the gross capitalized cost (i.e. the amount to be financed) (*Id*. at 101:19-102:6; 104:21-105:10; 152:12-14). Plaintiff contends that, by failing to reduce the capitalized cost by his $25,000 trade-in allowance, Defendants charged him an extra $3,970.93 in rent charges and taxes.

Plaintiff sent a "demand letter" to Porsche of Fort Myers (*Id*. at 153:12-18), which led to a meeting with dealership employees who told him that, while it was a "terrible lease," it was nonetheless legal and correctly handled (*Id*. at 132:2-23). The dealership employees told Plaintiff that "there is no capitalized cost reduction" on a single-payment lease (*Id*.). In fact, the computer system used by the dealership is not set up to permit a capitalized cost reduction on a single-payment lease; however, the dealership can apply a capitalized cost reduction if a customer requests the reduction (ECF No. 135-6, Harris Dep. at 23-24).

Plaintiff also sent correspondence to the Better Business Bureau (ECF No. 135-4, Cox Dep. at 132:4-5) and the Florida Department of Revenue (*Id*. at 154:16-19), before filing this lawsuit. The Department of Revenue responded in an unofficial capacity, stating that the "sales price" (which is defined by statute to include "leases") should exclude "trade-ins or discounts allowed and taken at the time of sale," citing to Fla. Stat. § 212.02(16) (ECF No. 135-17). Plaintiff did not send any complaints or demands pre-suit to any of the Defendants named herein.

In his Complaint, Plaintiff alleges nine counts: (1) violation of the Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.*, and Regulation M, 12 C.F.R. § 213 (against all Defendants); (2) *per se* violation of the Florida Deceptive and Unfair Trade Acts, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") (all Defendants); (3) violation of FDUTPA (all Defendants); (4) violation of FDUTPA (all Defendants); (5) breach of contract (all Defendants); (6) breach of covenant of

4

good faith and fair dealing (all Defendants); (7) negligent training and supervision (Porsche N.A.); (8) unjust enrichment (all Defendants); and (9) negligence (all Defendants). Plaintiff's claims stem from two acts: (1) Defendants' failure to disclose the value of a lessee's trade-in vehicle on its lease ("failure to disclose"); and (2) Defendants' failure to reduce the capitalized cost by the lessee's trade-in value ("failure to reduce") (ECF No. 1).[2]

On November 28, 2017, Defendants filed their motion for summary judgment (ECF No. 109) and statement of undisputed material facts (ECF No. 109-11). Plaintiff filed his response to Defendants' statement of facts on March 22, 2018 (ECF No. 135), and filed his response to the motion for summary judgment the next day (ECF No. 137). Defendants filed their reply on March 30, 2018 (ECF No. 146).

## II.      DISCUSSION

### A.      Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325. After the movant has met its burden under Rule 56(c), the

---

[2] Plaintiff seeks to certify two classes based on these two alleged violations in a separate motion. *See* ECF No. 104.

burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp*., 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

A prefatory note is warranted regarding the format of Plaintiff's Opposition to the present motion. Plaintiff's statement of material facts fails to comply with Local Rule 56.1. In opposing a motion for summary judgment, the non-moving party is required to respond to the movant's statement of material facts by admitting or denying in identically numbered paragraphs;

additional facts may be included at the end. In stark contrast to the rule's rigid and neat format, Plaintiff's statement of facts is a 36-page narrative argument. Paragraph 1 of Plaintiff's facts, for example, spans five pages, and includes a dozen citations and cross references to other "paragraphs." Plaintiff's Opposition in turn cites not to specific evidence, but to his statement of facts by paragraph—but as noted, each paragraph contained a litany of "facts" and cited multiple sources for those various facts. Evaluating the evidence adduced in opposition was a challenge, to say the least.

Under Local Rule 56.1, the Court has the authority to deem as admitted all the facts submitted by Defendants in support of their summary judgment arguments. *See Tim Hortons USA, Inc. v. Singh*, No. 16-23041-CIV, 2017 WL 1326285, at *3 (S.D. Fla. Apr. 5, 2017). Notwithstanding, and having completed the task of reviewing the original source materials where reliance on the Parties' respective statements of facts was inconclusive, the undersigned makes the following recommendations based on the evidence, taken in the light most favorable to Plaintiff, the non-moving party.

**B.      Judgment Should Not Be Entered on Plaintiff's CLA Claim**

Plaintiff alleges in Count 1 that "Porsche Leasing/Financial and its assignors have utilized a practice whereby they deliberately failed to accurately disclose what Net Trade-in Allowance, if any, that a consumer received in exchange for their trade-in vehicle, and how that Net Trade-in Allowance was applied to the lease" (ECF No. 1 at ¶ 110). Plaintiff alleges that Defendants' conduct violates the Consumer Leasing Act (CLA), which requires a lessor to make certain disclosures in a consumer's lease "in a clear and conspicuous manner." 15 U.S.C. § 1667a.  Regulation M to the CLA further specifies that a lessor "in motor-vehicle leases, shall itemize how the amount due will be paid, by type and amount, including any net trade-in

allowance . . . ." 12 C.F.R. § 213.4(b). Plaintiff alleges that Defendants, Porsche Leasing/Porsche Financial, failed to accurately disclose the Trade-In Allowance and thus deprived Plaintiff "of the opportunity to make an informed decision based on the full and accurate disclosure of the terms of the lease transaction," which resulted in him incurring a higher lease payment, a higher Rent Charge, and a higher sales tax (ECF No. 1 at ¶¶ 111-12).

Defendants move for summary judgment on Count 1 on multiple grounds, challenging the existence of a cognizable claim under the CLA and/or Regulation M for the failure to accurately disclose the value of Plaintiff's Trade-In Allowance; and even if the CLA recognizes such a claim, Defendants contend that Plaintiff lacks standing to bring it, as he suffered no injury. Alternatively, Defendants seek summary judgment on the grounds that none of the Defendants are "lessors" within the meaning of the CLA.

### 1.    Plaintiff's Claim Is Actionable Under the CLA

The CLA was passed by Congress as an amendment to the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*, which purports to "assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements."  15 U.S.C. § 1601(b). The TILA is a "remedial statute" that is "designed to protect borrowers who are viewed as not being on an equal footing with lenders." *Taylor v. United Mgmt., Inc.*, 51 F. Supp. 2d 1212, 1215 (D.N.M. 1999) (internal citation omitted). Accordingly, "TILA and CLA provisions are to be construed liberally in favor of borrowers." *Id.* Furthermore, "[a] proven violation of the disclosure requirements is presumed to injure the borrower by frustrating the purpose of

8

permitting consumers to compare various available credit terms." *Id.* (citing *Herrera v. First Northern Sav. and Loan Ass'n*, 805 F.2d 896, 901 (10th Cir. 1986)). "The requirements of the TILA are highly technical but full compliance is required. Even minor violations of the Act cannot be ignored." *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001) (internal citations omitted). The court need find "only a single violation of the statutory requirements to hold [a] defendant liable under the TILA." *Id.*

The CLA requires that each lessor to a consumer lease provide before consummation a dated, written statement that accurately and in a "clear and conspicuous manner" sets out certain descriptions, amounts, and other disclosures. 15 U.S.C. § 1667a(2). "Clear and conspicuous" requires that disclosures be "readily understandable." Official Staff Commentary to Regulation M, 12 C.F.R. § 213, Supp. I. Failure to comply with this statute creates a cause of action for the lessee against the lessor for actual damages and/or statutory damages. *See* 15 U.S.C. § 1667d(a); § 1640(a). Whether disclosures under the TILA are inaccurate, misleading, or confusing is a question of fact for the factfinder. *Clement*, 145 F. Supp. 2d at 209.

In passing the CLA, Congress also delegated to the Federal Reserve Board authority "to issue regulations 'to update and clarify the requirements and definitions applicable to lease disclosures'" and to publish "model disclosure forms to facilitate compliance with [the statute's] requirements." 15 U.S.C. § 1667f(a)(1), (b)(1). Those regulations, collectively referred to as "Regulation M," are codified at 12 C.F.R. § 213. The authoritative value of Regulation M and its associated commentary have been recognized widely by courts within this Circuit and elsewhere. *See, e.g., Torres v. Banc One Leasing Corp.*, 226 F. Supp. 2d 1345, 1348 (N.D. Ga. 2002), *aff'd in relevant part, vacated in part, remanded sub nom. Baez v. Banc One Leasing Corp.*, 348 F.3d 972 (11th Cir. 2003) (relying on Regulation M to determine legality of early termination charges

on summary judgment); *Kennedy v. BMW Fin. Servs., N.A.*, 363 F. Supp. 2d 110, 117 (D. Conn. 2005) (observing that courts "must defer" to Regulation M in interpreting the CLA).

Defendants argue that Regulation M impermissibly expands the CLA because the statute itself is unambiguous and is not entitled to *Chevron* deference; therefore, Regulation M's specific disclosure requirements impermissibly expand the statute. The Court rejects this argument. Under *Chevron*, "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Far from arbitrary or capricious, or contrary to the CLA, Regulation M clarifies the manner by which a lessor satisfies its obligations under the CLA by identifying specific items that must be disclosed on a consumer lease, including net trade-in value and capitalized cost. These requirements are consistent with the text and purpose of the CLA. Courts have given "great weight" to Regulation M and the administrative regulations promulgated by the Federal Reserve Board in interpreting the CLA. *Myers*, 54 F. Supp. 2d at 754 (citing *Investment Company Institute v. Camp*, 401 U.S. 617, 626–27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971)); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 560, 100 S. Ct. 790, 794, 63 L. Ed. 2d 22 (1980)); *Murphy v. Empire of America, FSA*, 746 F.2d 931, 933 (2d Cir. 1984).

Though no court in the Eleventh Circuit has yet determined whether the failure to disclose the trade-in allowance is a cognizable CLA violation, other courts have so held. In the case most analogous to the present dispute, *Taylor v. United Mgmt., Inc.*, 51 F. Supp. 2d 1212 (D.N.M. 1999), the court granted summary judgment in favor of the plaintiff on claims brought under the CLA, finding that the lease there failed to meet the CLA's requirement that the lease contain accurate and meaningful disclosures.  The plaintiff signed a lease with the defendant car

dealership, intending to trade in her car as a part of the lease agreement. The dealership's general manager found that the plaintiff's car was worth $4,000. Instead of applying $4,000 as a net trade-in allowance, the dealership listed on the lease agreement that a cash payment of $3,299 was made, with additional credits applied to various fees. The lease also showed, just as Plaintiff's lease does, that the net trade-in allowance was "N/A." Although the defendant dealership argued that the plaintiff's trade-in value had been applied to other items on the lease, the court noted that "that action served to reduce the principle owed by the least amount possible [which] of course, kept the monthly payment as high as possible." *Taylor*, 51 F. Supp. 2d at 1216. The court concluded that the lease documents "fail[ed] to meet the CLA's requirement that the lease contain accurate and meaningful disclosures." *Id.*

Similarly here, Plaintiff's lease agreement accepted by Porsche Financial indicated "N/A" for the trade-in allowance. This was inaccurate. The witness whom Porsche Financial presented as its corporate representative testified that, in her "personal" opinion, the $25,000 that Plaintiff received for his trade-in should have been disclosed on the lease agreement in the line indicated for the "Net Trade-in Allowance" (ECF No. 135-9, Supena Dep. at 167-169). Nor did Plaintiff pay $36,539.30 in "cash," as the lease agreement discloses; this too is inaccurate. Defendants dispute these inaccuracies and defend the lease as reflective of the deal actually entered. Defendants imply that the deal entailed first the purchase of Plaintiff's Hyundai for cash, then use of those funds to pay the lease separately negotiated. Plaintiff's testimony evidences his understanding that it was a one transaction with a trade-in. Plaintiff has adduced sufficient evidence that the lease agreement disclosures masked the fact that the credit was applied *after* the deal costs, including finance charges and taxes, were calculated on the capitalized cost, resulting in higher amounts paid by him. Count 1 states a cognizable claim under the CLA. In

sum, the evidence is sufficient to support Plaintiff's claim that the lease agreement disclosures violated the CLA.

### 2.    Plaintiff Has Standing

Defendants additionally argue that Plaintiff's claim is not justiciable because the failure to disclose the net trade-in value was at most a "bare procedural violation," which the Supreme Court has clarified recently is insufficient injury to confer standing upon a plaintiff. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Specifically, Defendants argue that Plaintiff has suffered no particularized injury from this failure to disclose, and therefore lacks standing. Plaintiff argues that the CLA gives statutorily-created rights, the violation of which creates standing.

Whether this alleged CLA violation is justiciable is also an issue of first impression in the Eleventh Circuit. Courts in other Circuits that have confronted the question have answered affirmatively. In *Jordon v. Schaumburg Toyota*, No. 97 C 6697, 1999 WL 116224 (N.D. Ill. Feb. 26, 1999), *aff'd sub nom. Jordan v. Toyota Motor Credit Corp.*, 236 F.3d 866 (7th Cir. 2001), the court found that a failure to disclose lease terms in violation of the CLA was enough to harm the plaintiff to confer standing. The court reasoned that:

> The logic for this rule is rather simple. The CLA requires lessors to fully and truthfully disclose certain terms of a lease so that consumers can make informed choices. … If a lease does not properly disclose its terms, then consumers that rely on those untruthful or incomplete terms when deciding whether to enter into the lease necessarily make an uninformed decision. Therefore, the harm to the consumer for a CLA disclosure violation occurs when the consumer relies on the inaccurate disclosure and executes a lease without full and truthful information. Because the misinformed consumer suffers an injury simply by entering the lease agreement, that consumer has standing to assert a CLA failure to disclose violation regardless of what acts the consumer or the lessor took after the parties executed the lease.

*Id.* at \*4 (internal citation omitted); *see also Herrera v. First Northern Sav. and Loan Ass'n*, 805 F.2d 896, 901 (10th Cir. 1986) (finding CLA violation for failure to disclose is "presumed to injure the borrower by frustrating the purpose of permitting consumers to compare various available credit terms."). In *Myers v. Hexagon Co.*, 54 F. Supp. 2d 742, 755 (E.D. Tenn. 1998), for example, the court agreed that the very act of putting "N/A" instead of "$0" when there was a trade-in was enough to constitute a "clear" violation of the CLA, awarding the plaintiff statutory damages without analyzing whether plaintiff suffered any additional harm under the Act other than non-disclosure.

Defendants attempt to distinguish those cases on the basis that they predate the Supreme Court's decision in *Spokeo*. Applying the guidance *Spokeo* provides, the undersigned agrees that the harm alleged by Plaintiff is sufficiently distinct and concrete to survive *Spokeo*'s standard. Indeed, the Eleventh Circuit has recently recognized the right to receive the disclosures mandated by the Fair Debt Collection Practices Act (FDCPA) is substantive—it is not the sort of "bare procedural violation" incapable of supporting Article III standing. *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 n.2 (11th Cir. 2016); *see also Maximiliano v. Portfolio Recovery Assocs., LLC*, No. 9:17-CV-80342, 2017 WL 6388918, at \*3 (S.D. Fla. Aug. 7, 2017). Defendants attempt to distinguish *Church* on the basis that Plaintiff here was not actually deceived. In so arguing, Defendants would have the Court decide a disputed fact in their favor. Plaintiff's alleged violation of the statutorily-created right under the CLA for disclosure of certain lease terms in a clear and conspicuous manner is a concrete injury that satisfies the injury-in-fact requirement. Plaintiff has standing to bring the claim and the undersigned recommends denying Defendants' motion on this ground.

### 3.     Defendant Porsche Financial May Be Liable as a "Lessor"

Defendants contend that none of the named Defendants – Porsche Financial, Porsche Leasing, or Porsche N.A. – are lessors within the meaning of the CLA and thus cannot be held liable for any alleged violations. Defendants also contend that Porsche Leasing is at most an assignee of the lease, and accordingly its liability is limited to violations that are apparent on the face of the lease. In his Opposition, Plaintiff advances evidence with respect to Porsche Financial's status as a lessor, but nothing to support his allegations that the other two Defendants are lessors.[3] Because the record evidence, viewed in the light most favorable to Plaintiff, would support a finding that Porsche Financial is a lessor, the undersigned recommends denying Defendants' motion with respect to Porsche Financial; however, the same cannot be said for Defendants Porsche Leasing and Porsche N.A.

Liability for violating the CLA attaches to any lessor "who fails to comply with any requirement imposed under section 1667c of this title with respect to any person who suffers actual damage from the violation is liable to such person as provided in section 1640 of this title." 15 U.S.C. § 1667d. The CLA defines a "lessor" as "a person who is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease." 15 U.S.C. § 1667(3). Regulation M further specifies that a "lessor" is a "person who has leased, offered, or arranged to lease personal property more than five times in the preceding calendar year." 12 C.F.R. § 213.2(h). The TILA limits the liability of an assignee of a lessor to violations that are "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). The two hats are not mutually exclusive: a lessor may also be an assignee, and vice versa, a scenario common enough that the staff commentary to Regulation M observes that "an assignee may be a lessor for purposes of the

---

[3] At the hearing, Plaintiff's counsel acknowledged that when the Complaint was drafted, the relationship between Defendants was unknown. The relationship between Porsche Financial and Porsche Leasing, and their respective roles in the lease transaction, is not clear from the briefing or elucidated by the statements of facts.

regulation in circumstances where the assignee has substantial involvement in the lease transaction." 12 C.F.R. § 213.2(h), Supp. I.

The crux of Defendants' argument is that no Defendant participated in the negotiation with Plaintiff; that was undisputedly conducted between Plaintiff and the dealership's employees. Defendants also rely on the fact that Plaintiff's lease was initially payable to Porsche of Fort Myers, not to any of the Defendants, and that the dealership was not required to assign the lease to Porsche Financial.

In response, Plaintiff argues that the approval of its lease was contingent upon approval and financing by Porsche Financial. Plaintiff also claims that Porsche Financial markets itself as a lessor, citing to an affidavit filed in support of a previously-filed motion in this case by Jeanne Supena, manager of Porsche Financial, who testified that Porsche Financial has acquired approximately 8000 leases from Florida Porsche Dealers (ECF No. 43-1). Plaintiff also points to Porsche's website, which advertises that Porsche Financial "provide[s] [consumers] with competitive leasing and financing options." Finally, Plaintiff claims that Porsche Financial admits that it is the leased vehicle's lessor and that its lease products are covered by Regulation M.

Upon consideration of the evidence adduced by both Parties, it is clear that Porsche Financial has regularly engaged in leasing under the definition of the CLA. While the undersigned again notes that the Eleventh Circuit has not dealt with this issue, courts in other districts have held similar automobile finance companies liable as lessors arising from a lease negotiated by an intermediary dealership. *See Candelaria v. Nissan Motor Acceptance Corp.*, 740 F. Supp. 806, 807 (D.N.M. 1990); *c.f. Volkswagen "Clean Diesel" Mktg., Sales Practices, & Products Liab. Litig.*, MDL 2672 CRB (JSC), 2017 WL 2212783, at *3 (N.D. Cal. May 17,

2017). Even accepting Defendant's characterization of Porsche Financial as an "assignee," Plaintiff has advanced sufficient evidence to create a triable question of whether its involvement was "substantial."

Finally, the lease agreement is facially inaccurate as to put Porsche Financial on notice for assignee liability. Line 2(B) of the lease displays the year, model, and make of Plaintiff's trade-in vehicle, thus putting Porsche Financial on notice that there was in fact a trade-in vehicle. However, the line for "Net Trade-In Allowance" states "N/A," which should have alerted Porsche Financial to the fact that the disclosure was inaccurate or incomplete.

Defendants argue that, even if inaccurate, it was not apparent on the fact of the lease: it is possible, for example, that Plaintiff's trade-in had no positive equity. In this scenario, Defendants argue, it would not be inaccurate for the line "Net Trade-in Allowance" to be filled in "N/A." Line 2(B) of the disclosure statement reports the year, model, and make of Plaintiff's trade-in vehicle, thereby putting Porsche Financial on notice that there was in fact a trade-in vehicle. However, Defendants advanced the testimony of Jeanne Supena, manager of Porsche Financial, who provided a declaration that avers that Porsche Financial was unable to tell if the car had positive equity (ECF No. 135-8). Defendants' proposed explanation that Plaintiff's car could have had no positive equity fails to explain why "N/A" would be an accurate disclosure under this scenario, as opposed to accurately disclosing "$0." Ms. Supena moreover testified that before assuming the lease, its credit representatives review the proposed lease for compliance with the TILA (ECF No. 135-8, Supena Dep. at 15:9-19).

Plaintiff has adduced sufficient evidence on which a trier of fact could find that Porsche Financial is a "lessor" within the meaning of CLA, and alternatively that the disclosure statement is facially deficient. Accordingly, the undersigned recommends that Defendants' motion for

summary judgment be denied as to Count 1 with respect to Defendant Porsche Financial, and granted as to Defendants Porsche Leasing and Porsche N.A.

### C.    Count 2, 3, 4 - FDUTPA

Defendants move for summary judgment on Counts 2, 3, and 4, which all allege violations under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201. Defendants move on the following grounds: (1) there is no unfair or deceptive practice and Plaintiff has suffered no loss caused by an alleged violation; (2) even if the dealer could be liable, Defendants cannot be held vicariously liable for the dealer's acts; (3) Plaintiff's claims are barred by the voluntary-payment doctrine; and (4) Plaintiff's recovery for overpayment of Florida sales tax is precluded by statute. In opposition, Plaintiff again advances no evidence with respect to Defendant Porsche Leasing, focusing on the liability of Porsche Financial, and to a lesser degree, Porsche N.A., as discussed further below.

### 1.    Statute/Legal Standard

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The purpose of this law is: (1) "[t]o simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices;" (2) "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce;" and (3) "[t]o make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202.

The elements for a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983–84 (11th Cir. 2016). While the Florida legislature has not specifically defined what a "deceptive act or unfair practice" is, it has mandated that FDUTPA "shall be construed liberally." Fla. Stat. § 501.202. Courts in this district have held that a "deceptive act" is one where a "representation, omission, or practice occurred that was likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment;" an "unfair practice" is one that "offends established public policy and…is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (internal citations omitted).

## 2. Deceptive Acts

Defendants contend that they are entitled to summary judgment on all three FDUTPA counts because there has been no deceptive act for any of the FDUTPA counts that is sufficient to meet the first element of FDUTPA. Count 2 alleges a "*per se*" violation of FDUTPA for the violation of the CLA alleged in Count 1; Count 3 alleges that Defendants have utilized a trade practice whereby they deliberately failed to accurately disclose the net trade-in allowance and how that net trade-in allowance was applied to the lease; and Count 4 alleges a violation for Defendants' failure to reduce the capitalized cost by net trade-in allowance.[4]

---

[4] Count 4 alleges that Defendants have violated FDUTPA by: (a) "Establishing a uniform pattern, policy, and practice of failing to apply the Net Trade-in Allowance as a Capitalized Cost Reduction in their customers' leases;" (b) "Representing to Plaintiff and Class Members in the standard form motor vehicle lease agreement that the Capitalized Cost Reduction included '[t]he amount of any Net Trade-in Allowance,' when it did not;" (c) "Establishing a uniform pattern, policy, and practice of failing to exclude the positive monetary value of a consumer's trade-in vehicle, if any, from the calculation of the sales tax due on the lease under Florida law;" and (d) "Collecting and retaining the improperly charged sales tax from Plaintiff and Class Members on amounts that are not properly taxable, and profiting from the collection of such improper taxes from Plaintiff and Class Members through the imposition of such taxes into their revenue stream" (ECF No. 1 at ¶ 146).

For Count 2, Defendants rely on their arguments analyzed above that, because there is no CLA violation, there can be no *per se* violation of FDUTPA. Fla. Stat. § 501.203(3)(c) provides that a *per se* violation FDUTPA may be founded on the alleged violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices." *See Williams v. Delray Auto Mall, Inc.*, 916 F. Supp. 2d 1294, 1300 (S.D. Fla. 2013); *Virani v. Homefield Fin., Inc.*, No. 609CV511ORL22DAB, 2010 WL 11507411, at *6 (M.D. Fla. May 10, 2010). The CLA, which is an amendment to the TILA, falls under this definition. *See Jones v. TT of Longwood, Inc.*, No. 606CV-651ORL-19DAB, 2006 WL 2789140, at *6 (M.D. Fla. Sept. 26, 2006) (finding violation of TILA amount to an unfair or deceptive trade practice under FDUTPA); *see also Taylor v. Homecomings Fin.*, LLC, 738 F. Supp. 2d 1257, 1264 (N.D. Fla. 2010) (finding a FDUTPA violation may "in some circumstances" be based on the TILA).

Defendants do not dispute that a CLA violation may form the basis of a FDUTPA claim. However, they argue that no CLA violation exists to form this basis in the first place. For the reasons stated above, the undersigned finds that there is sufficient evidence for a reasonable jury to find that Porsche Financial violated the CLA and accordingly rejects this argument.

With respect to Counts 3 and 4, Defendants argue that neither the failure to disclose nor the failure to reduce the capitalized cost of the leased vehicle were deceptive or misleading acts because Plaintiff in fact knew exactly what had transpired during his negotiation with the dealer. They proffer Plaintiff's testimony about the $25,000 being applied to the $36,539.30 "Amount to Be Paid in Cash" for the proposition that Plaintiff knew that he was not receiving a capitalized cost reduction. (ECF No. 135-4 at 165:8-18). Defendants further aver that because the contract accurately disclosed the fact that there was no capital cost reduction, it could not be deceptive.

Defendants' insistence that the contract truthfully disclosed the terms about which Plaintiff now complains is not a bar to a finding that the practice is unfair or deceptive. *See Schauer v. Gen. Motors Acceptance Corp.*, 819 So. 2d 809, 813 (Fla. Dist. Ct. App. 2002), *reh'g denied*, *clarification granted* (June 26, 2002).

The undersigned finds that there is sufficient evidence for a reasonable jury to find that the failure to reduce the capitalized cost by the net trade-in value is deceptive. Specifically, a customer could reasonably assume that a "trade-in" credit would be applied to reduce the capitalized cost of the leased vehicle, whether or not he was specifically told so by a dealership employee. Plaintiff's lease agreement in fact defines a "capitalized cost reduction" as "the amount of any Net Trade-In Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost" (ECF No. 135-2). This defined term is consistent with Regulation M, which likewise defines a capitalized cost reduction as "a payment in the nature of a downpayment on the leased property that reduces the amount to be capitalized over the term of the lease." Regulation M, 12 C.F.R. § 213, Supp. I (Official Staff Commentary). Applying either, a customer could reasonably assume that the trade-in allowance was applied to reduce the amount to be capitalized over the lease term. Indeed, there is statutory support in Florida that a trade-in taken at the time of entering the lease must be excluded from taxation. *See* Fla. Stat. § 212.02(16).

It is undisputed that the dealership agreed to credit Plaintiff $25,000 for his trade-in credit for his vehicle, and that the dealer failed to apply that credit in the manner contemplated by Regulation M, so that it reduced the amount to be capitalized. The form provided by Porsche Financial enabled the dealer to veil this fact from Plaintiff, and his failure to appreciate the absence of a capitalized cost reduction is apparent from the fact that he asked the dealer to show

him where the credit was applied. Plaintiff has adduced sufficient evidence from which a jury may find that the failure to disclose net trade-in value and the failure to reduce capitalized cost were deceptive.

### 3.   Causation

Defendants contend that Porsche Financial may not be held vicariously liable for the acts of non-party Porsche of Fort Myers. Plaintiff responds that he is not trying to hold Porsche "vicariously liable" under FDUTPA because Porsche Financial is directly responsible for violations of FDUTPA. Defendants contend that, in the absence of their "direct involvement," they cannot be held liable under FDUTPA. *Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1277 (S.D. Fla. 2007) (granting motion to dismiss with respect to individual defendant where complaint failed to specify his individual actions and how they constitute a violation of FDUTPA). *Aboujaoude* stands for the proposition that, where a corporation and its principle are both named defendants, liability may only attach to the individual principle upon a sufficient showing of direct involvement by that individual, absent a basis to pierce the corporate veil. Plaintiff has adduced competent sufficient evidence of Porsche Financial's direct involvement.

Plaintiff's FDUTPA claims are not dependent on a finding that Defendants were directly involved in the lease negotiation. "Conspicuously lacking from the provision granting individuals a cause of action is any requirement that the individual must have suffered the violation at the hands of a party who has provided goods or services to that individual." *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1274 (S.D. Fla. 2005). In a case arising under analogous facts, the court denied defendant's motion to dismiss where plaintiff alleged that defendant's application of the contested contract provisions constituted direct participation in the allegedly deceptive practice, even though the deceptive practice was initiated by another entity, and

plaintiff further alleged that defendant subsequently caused plaintiff to suffer actual damages by requiring plaintiff to pay an amount plaintiff alleged defendant knew exceeded that which was permissible. *See Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008); *see also Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1057 (S.D. Fla. 2009) (allegations of defendant's promotion and advertisement sufficient to demonstrate defendant was active participant in scheme). Plaintiff similarly here adduced evidence that the dealerships follow Porsche Financial's guidelines with respect to the financing component of the deal (ECF No. 135-6, Harris Dep. at 64:11-25). Though Defendants argue that there is no policy or procedure whereby Porsche Financial trained or otherwise instructed Porsche of Fort Myers in how to fill out the lease, this constitutes a material dispute that precludes entry of summary judgment in Defendants' favor.

Finally, Plaintiff alleges that Defendants are liable for establishing procedures for dealers to follow, which failed to exclude the trade-in vehicle from the causation of sales tax in violation of Florida law (ECF No. 1. at ¶ 146(c)). In opposition to the motion for summary judgment, Plaintiff avers that Defendant Porsche N.A. is responsible for creating the guidelines applied by the dealers. In support, Plaintiff cites to Porsche Financial's interrogatory response that it "applies procedures developed by the [Porsche N.A.] Tax Department to determine that the correct rate has been applied and that the calculations on the lease are accurate" (ECF No. 135-11). This is not sufficient to show that Porsche N.A.'s procedures have any connection to whether Porsche of Fort Myers or any other dealer determines whether to apply trade-in value as a capitalized cost reduction. Defendants have proffered deposition testimony that these procedures are primarily to check whether the correct rate was applied to the taxable basis shown on the lease; and that Porsche N.A. "does not do anything directly with the dealers to ensure that

the dealer complies with tax laws" (ECF No. 146-2, Boncuore Dep. at 26:6-13, 74:13-75:1). Plaintiff has failed to rebut this with competent evidence and demonstrate the existence of a genuine issue on which Defendant Porsche N.A. could be held liable for violating FDUTPA. Accordingly, the undersigned recommends granting summary judgment with respect to Defendant Porsche N.A. on Counts 2, 3, and 4.

### 4.   Damages

Finally, Defendants argue that Plaintiff has not suffered any damages even if there were a deceptive act. They contend that Plaintiff cannot recover damages from a deal that the dealer would have never entered into, namely applying net trade-in value as a capitalized cost reduction for a single-payment lease. Plaintiff argues that he can recover the difference between the unlawful lease he entered into and the lawful lease he should have entered into. He contends that this results in a difference of $3,970.93.

Under FDUTPA, consumers may recover actual damages, which are measured by "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640725, at *5 (S.D. Fla. Aug. 3, 2017) (internal citation omitted); Fla. Stat. § 501.211. The rationale for this calculation is that FDUTPA is "intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Id.*

Defendants argue that Plaintiff cannot recover damages based on a deal that he "might have made," and advance evidence that the dealer would not have agreed to a capitalized cost reduction on Plaintiff's single-payment lease. *See* ECF No. 135-10, Trombley Dep. at 148:11–

12. Defendants rely on *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 278 n.5 (Fla. 4th DCA 1998). In *Laesser*, the lessee agreed to a deal to purchase a car, after which the car dealership performed a "bait and switch" and convinced the lessee to accept a different deal that would allegedly save him money, while in actuality increasing its profits. Here, the facts show that Plaintiff only ever agreed to one deal, which was the single-payment lease. The damages that Plaintiff might recover are not based on any other deal, but from the money Plaintiff lost out had the dealer correctly itemized the net trade-in allowance into the capitalized cost reduction.

The evidence further supports the inference that Plaintiff was under the impression that there was no difference where the $25,000 was applied to on his lease, whether it was listed as a trade-in or cash. He has alleged that the faulty disclosure deprived him of the opportunity to make an informed decision and ultimately resulted in his over-payment of certain costs. Similarly, in *Myers*, the court found that the plaintiff's actual damages for the defendant's deceptive practices was the difference in the monthly payment they had been assessed and the monthly payment they should have been assessed if they had been credited with their equity. Accordingly, the undersigned recommends that summary judgment not be granted on any of the FDUTPA counts on the grounds that no actual damages exist.

### 5.   Voluntary-Payment Doctrine (Counts 2, 3, 4, 9)

Defendants raise the voluntary-payment doctrine as an affirmative defense to Plaintiff's state law claims. Under Florida law, "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal." *Sanchez v. Time Warner, Inc.*, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998) (quoting *McMullen v. Inland Realty Corp.*, 152 So. 740, 742 (Fla. 1933)). "It does not matter that the payment may have been

made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances." *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000).

Here, as described above, there is a genuine dispute whether Plaintiff entered into the lease deal with "knowledge of the factual circumstances." Plaintiff has adduced competent evidence that he did not, namely his testimony that he did not know at the time of entering his lease that the application of his $25,000 as cash resulted in higher payments than if it was credited as a trade-in against the capitalized cost. While Defendants attest that Plaintiff knew the deal he was entering, Plaintiff testified that he only learned of the factual circumstances known to Defendants after he paid. On the evidence adduced, Defendants have failed to demonstrate entitlement to summary judgment on this affirmative defense.

### 6. Fla. Stat. § 213.756 (Counts 2, 3, 4)

Defendants argue that Fla. Stat. § 213.756 precludes a cause of action in its entirety when, as here, all taxes collected were remitted to the government (ECF No. 109-1 at 30). The statute on which Defendants rely states that:

> In any action by a purchaser against a retailer, dealer, or vendor to obtain a refund of or to otherwise recover taxes, fees, or surcharges collected by the retailer, dealer, or vendor from the purchaser … The sole remedy in the action is damages measured by the difference between what the retailer, dealer, or vendor collected as a tax, fee, or surcharge and what the retailer, dealer, or vendor paid to the taxing authority.

Fla. Stat. § 213.756(2)(a). This is an "affirmative defense to the action when the retailer, dealer, or vendor remitted the amount collected from the purchaser to the appropriate taxing authority." *Id.* Because Defendants aver that they have remitted all taxes collected to the taxing authority Defendants contend that this provides a complete defense to Plaintiff's tax over-payment claims. Plaintiff responds that neither Porsche Financial nor Porsche N.A. is a "retailer, dealer, or

vendor," and that, regardless, the statute would have no preclusive effect on the injunctive relief sought.[5] Plaintiff moreover urges the Court to construe FDUTPA liberally in affording relief based on over-collection of taxes in light of allegedly deceptive acts that otherwise violate the statute.

The undersigned finds that Defendants have not met their burden in showing entitlement to judgment on this affirmative defense. The plain language of Fla. Stat. § 213.756 does not preclude a finding that the acts were deceptive - whether they kept the taxes or remitted them to the government. At least one Florida trial court has recently held that improper collection of taxes may still be deceptive under the "broad remedial language" of FDUTPA even if the defendant does not keep the taxes. *Bugliaro v. BJ's Wholesale Club*, 2017 WL 5906751 (Fla. Cir. Ct. May 24, 2017). Accordingly, the undersigned recommends denying summary judgment on Counts 2, 3, and 4 on this affirmative defense.

### D.     Counts 5, 6, 7, 8 – Common Law Claims

Plaintiff's Complaint alleged causes of action under common law for breach of contract (all Defendants); breach of covenant of good faith and fair dealing (all Defendants); negligent training and supervision (Porsche N.A.); and unjust enrichment (all Defendants). In his response and again at the hearing, Plaintiff presented no opposition to the motion for summary judgment and indicated an intention to seek leave to amend these counts. Accordingly, the undersigned recommends granting summary judgment on Counts 5, 6, 7, and 8 with respect to all Defendants as alleged.

### E.     Count 9 - Negligence

---

[5] In his Complaint, Plaintiff seeks "Declaratory and injunctive relief enjoining Defendants from continuing to violate federal and Florida law relative to the unlawful treatment of a consumer's Net Trade-in Allowance and the imposition and collection of sales taxes" (ECF No. 1 at 39).

Finally, Plaintiff alleges in Count 9 of his Complaint that Defendants were negligent in failing to establish lawful policies and practices and to train its employees, agents, and affiliates to collect the proper amount of sales tax on consumers' leases. As to Porsche N.A., Plaintiff's negligence theory is based on the "undertaker's doctrine" for breach of an assumed duty to set the tax procedure that injured Plaintiff. "Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the 'undertaker'—thereby assumes a duty to act carefully and to not put others at an undue risk of harm." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003).

The Court finds that there is insufficient evidence to find that Porsche N.A. (or Porsche Financial) assumed a duty to set tax procedures for Porsche of Fort Myers. As discussed above, the evidence cited by Plaintiff fails to demonstrate a meaningful connection between Porsche N.A.'s tax procedures and Porsche of Fort Myers' overcharge of sales tax, and indeed does not show that the dealer or any of the Defendants relied on these procedures in their application of the trade-in the manner disputed. Accordingly, the undersigned recommends that summary judgment be granted on Count 9 for all Defendants.

## III.   CONCLUSION

For the foregoing reasons, the undersigned **REPORTS AND RECOMMENDS** that Defendants' Motion for Summary Judgment (ECF No. 109) be **GRANTED IN PART** and **DENIED IN PART**:

1. The Motion should be **DENIED** with respect to Defendant Porsche Financial Services on Counts 1, 2, 3, and 4;

2. The Motion should be **GRANTED** with respect to Defendant Porsche Leasing with respect to all counts;

3. The Motion should be **GRANTED** with respect to Defendant Porsche N.A. with respect to all counts;

4. The Motion should be **GRANTED** with respect to all Defendants with respect to Counts 5, 6, 7, 8, and 9.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Darren P. Gayles, United States District Judge. Failure to timely file objections shall bar the Parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the Parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** this 30th day of August, 2018.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE