UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-CV-23409-GAYLES/LOUIS

STEVEN MICHAEL COX, individually and
on behalf of those similarly situated,

       Plaintiff,

vs.

PORSCHE FINANCIAL SERVICES, INC.

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Class Certification, filed on November 21, 2017 (ECF No. 104). The motion was referred to the undersigned United States Magistrate Judge by the Honorable Darren P. Gayles, United States District Court Judge, for a Report and Recommendation (ECF No. 148, 159). A hearing was held before the undersigned on July 18, 2018. The Court has carefully reviewed the Parties' submissions and is otherwise duly advised in the premises. Upon consideration, the undersigned **REPORTS AND RECOMMENDS** that the motion be **GRANTED**.

**I.    BACKGROUND**

Plaintiff Steven Michael Cox brings this putative class action against Defendant Porsche Financial Services, Inc. ("Porsche").[1] Plaintiff's allegations stem from a car lease transaction at Porsche of Fort Myers, a non-party car dealership in Florida. On March 10, 2015, Plaintiff visited Porsche of Fort Myers and signed a single-payment lease for a 2015 Porsche Cayman for $36,254.88 (ECF No. 105-1, Cox Lease). A single-payment lease, as the name suggests, enables

---

[1] Summary judgment has been granted against Defendants Porsche Leasing Ltd. and Porsche Cars North America, Inc. (ECF No. 202).

1

the lessee to make a single payment of all finance charges, in exchange for more favorable financing terms (a lower "buy-rate"); by contrast, a monthly lease requires payments month-to-month at generally higher rates. Plaintiff traded in his 2015 Hyundai Genesis for $25,000 and wrote a check for the remaining amount of $11,539.30 (Cox Dep. at 149:9-15). The value of Plaintiff's trade-in vehicle in excess of that owed on the vehicle is considered the "positive equity."

At the dealership, Plaintiff noticed that the lease form indicated "N/A" on the line "Net Trade-In Allowance." Plaintiff asked the dealer where the credit for his trade-in was (Cox Dep. at 150:9-16). The dealer told Plaintiff "it's right there," in the line provided for "Amount to Be Paid in Cash" ($36,539.30) (*Id.*; ECF No. 105-1). Plaintiff left the dealership with the 2015 Porsche Cayman, and made no additional payments to the Porsche of Fort Myers dealership (Cox Dep. at 86:4-5, 17-18).

The standard lease form that Plaintiff executed was provided by Porsche to the dealership for use in its leases. Porsche has an agreement with the dealership, in which Porsche warrants that the preprinted portions of the forms provided to the dealer, if completed accurately by dealer, comply with federal and state law. As part of the transaction, Plaintiff completed forms provided by Porsche, including a credit application, whereafter the dealer entered Plaintiff's information into an online portal which transmitted the data to Porsche. The information transmitted to Porsche by the dealership revealed that Plaintiff had traded in his Hyundai Genesis, but disclosed no value for the net trade-in amount, lienholder, or monthly payment amount in the spaces provided. Porsche approved Plaintiff's credit application, and Plaintiff signed the lease agreement. The dealer then sent Porsche a variety of required documents, which include the signed lease agreement, the dealer worksheet, and Plaintiff's credit application. Once

in receipt of the documents, Porsche reviewed Plaintiff's lease for legal compliance with the Truth-in-Lending Act, which Porsche calls "discounting the deal." Porsche's Contract Process Standards Handbook provides that the process of discounting a deal requires validation of the papers presented for accuracy, completeness, and usage of up-to-date and valid forms. Porsche's employees use the handbook's guidelines, and "review rules" to ensure compliance with the Truth in Lending Act before acquiring a lease.

Soon after signing, Plaintiff reviewed the lease agreement with his neighbor, a retired car salesman, who opined that the rent charges were "extremely high;" in fact, he told Plaintiff that "he had never seen a rent charge so high" (Cox Dep. at 95:3-96:19). Plaintiff began investigating comparable leases, consulted an attorney, and ultimately came to believe that rent charge, sales tax, and the total lease payment were all inflated because the dealership had not applied the value of his trade-in to reduce the gross capitalized cost (i.e. the amount to be financed) (*Id*. at 101:19-102:6; 104:21-105:10; 152:12-14).

Plaintiff filed his complaint on August 8, 2016 (ECF No. 1, Compl.). Defendant moved for summary judgment on all counts, which the Court granted in part. The remaining claims allege that Defendant Porsche, as the in-house finance company for the Porsche dealerships, supplies its dealers with standard lease forms for lease transactions with consumers, receives assignment of the executed leases from the dealers, and ultimately processes and approves the executed leases (Compl. at ¶ 21, 23, 24). Plaintiff contends that Porsche has reviewed and approved leases, like Mr. Cox's, that unlawfully failed to disclose the consumers' trade-in value received in exchange for their trade-in vehicle, and failed to properly credit the consumers' trade-in value in calculating lease payments and fees (*Id.* at ¶ 2). These practices allegedly deprive the consumers from making an informed decision based on accurate lease disclosures,

and result in higher rent fees and taxes paid by the consumer, all while Porsche collects unwarranted profits (*Id.* at ¶ 3). Plaintiff alleges that these acts violate both the Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.* ("CLA") (Count 1) and the Florida Deceptive and Unfair Trade Acts, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") (Counts 2-4).

Plaintiff moves to certify two separate classes stemming from his allegations:

**Inaccurate Disclosure Class**: Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendants and, as part of the transaction, traded in a vehicle with a positive monetary value that was not assigned a positive Net Trade-in Allowance. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.

**Overcharge Class**: Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendants and, as part of the transaction, traded in a vehicle with a positive monetary value that was not properly credited as a Capitalized Cost Reduction. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.

(*Id.* at ¶ 82; ECF No. 104). In opposition, Defendant chiefly argues that individualized investigation will be required with respect to each class member: first, a determination will have to made whether the putative member had positive equity in their trade-in vehicle; then, the putative member in the Inaccurate Disclosure Class will have to show that the positive equity was not disclosed in her lease agreement, and putative members in the Overcharge Class will have to show that the positive equity *should have been*, but was not, applied to reduce the capitalized cost. Defendant avers that these individualized investigations cannot be conducted based only on documents in its possession, but would require review of thousands of documents in the possession of third parties, as well as investigation of what occurred at the dealership for each transaction. Defendant contends that these individualized investigations defeat Plaintiff's ability to show ascertainability, commonality, and predominance.

4

## II.     LEGAL STANDARD

In order to state a claim that is appropriate for class treatment, the Federal Rules of Civil Procedure require that the suit meet four prerequisites, commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Piazza v. EBSCO Industries, Inc.*, 273 F.3d 1341, 1345 (11th Cir. 2001). Specifically, the Rule states that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

To be certified as a class action, the case must then also meet one of three additional requirements of Rule 23(b). Plaintiff seeks a hybrid certification pursuant to Rule 23(b)(3) and 23(b)(2), as he seeks both monetary and equitable relief. Rule 23(b)(3) requires a plaintiff to prove that common questions predominate over any questions affecting only individual members; and class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *Harris v. Nortek Glob. HVAC LLC*, No. 14-CIV-21884, 2016 WL 4543108, at *3 (S.D. Fla. Jan. 29, 2016) (citing *Amchem Products, Inc. v. Windson*, 521 U.S. 591, 615 (1997)). On the other hand, certification is appropriate under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* (citing Fed. R. Civ. P. 23(b)(2)).

### III.     ANALYSIS

#### A.     Class Definition

The first step in determining whether a class should be certified is to decide whether the Plaintiff has identified a class that exists and that can be precisely defined. "An identifiable class is essential so that the Court can determine whether a particular claimant is a class member." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 266 (S.D. Fla. 2003) (internal citations omitted).

Defendant avers that in order to determine class membership, each lease transaction would have to be examined and inquiry made into the "background of each dealer-class member interaction," a fact Defendant says Plaintiff concedes (ECF No. 125 at 22). Plaintiff, in reply, advances evidence showing that each class member's claims depend on review of one, at most two, documents that Defendant has the right to demand from its dealerships. Neither argument truly goes to the question of ascertainability, which this Court finds easily satisfied in the proposed class definitions.

Ascertainability is an implicit requirement of Rule 23 for class certification. *See Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014); *c.f. John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). To meet the ascertainability requirement, the Eleventh Circuit requires the plaintiff to show "objective criteria" for identifying class members. *Bussey*, 562 F. App'x at 787. Many courts in our circuit require that the objective criteria be "administratively feasible," which means that the identification of class members is a

"manageable process that does not require much, if any, individual inquiry."[2] *Id.*; *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).

Plaintiff's proposed classes identify members as Florida consumers who: (1) executed a lease for a Porsche vehicle using the standard Motor Vehicle Lease Agreement; (2) traded in a vehicle with positive equity; (3) that was not assigned a positive Net Trade-in Allowance ("Inaccurate Disclosure Class"); and/or (4) their trade-in value was not credited as a Capitalized Cost Reduction ("Overcharge Class"). These are "objective criteria." *Bussey*, 562 F. App'x at 787.

Defendant argues that the class members cannot be determined reliably from their documents, relying on the court's holding in *Karhu*. However, Defendant's reliance on *Karhu* is misplaced. In *Karhu*, the Eleventh Circuit affirmed the district court's finding that the plaintiffs did not meet the ascertainability requirement to certify a class of purchasers of a weight-loss supplement. There, the court determined that the plaintiff's proposal to use general "sales data" to identify class members was "incomplete," "bare," and lacked sufficient explanation as to how exactly the data would aide class-member identification. *Id.* at 949-50. By comparison, Plaintiff has advanced evidence that positive equity, the primary qualifying criteria for all class members, can be determined through minimal documentation attendant to each class member's transaction, such as the lease recap, or the dealer worksheet that dealers possess and can provide. *See Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 416 (N.D. Ga. 2017) (finding ascertainability satisfied even though class membership determination would require examination of individual files).

---

[2] In the recent Eleventh Circuit opinion *Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018), the court notes that our circuit has not yet addressed in a published opinion whether the plaintiff must demonstrate an "administratively feasible" method for determining class membership – which is the "highest standard among the various circuits" – in addition to the express requirements of Rule 23. Here, Plaintiff distinguished his case from *Karhu* without challenging applicability of that standard. Accordingly, the undersigned applies this standard in its analysis.

That individual dealerships maintained different forms or types of databases to memorialize this information does not render the process of identifying class membership administratively infeasible. Defendant further contends that the documents constitute hearsay, and may be inaccurate. These deficiencies, if they exist, may be remedied by requiring class members to affirm that their trade-ins had positive equity.

In effort to show how few class members exist, Defendant advanced proof of hundreds of examples of leases that would not fit in the class definition. In so doing, and by following the steps Plaintiff advocates for determining class membership, Defendant was able to conclusively determine that those subject lessees could not be the basis for class membership. So too will the Court be able to conclusively determine class membership for the putative class from the documents identified by Plaintiff.

Plaintiff has advanced a class definition that establishes objective criteria for determining class membership, and the undersigned finds that the ascertainability requirement has been met.

### B.     Numerosity

Rule 23(a)(2)'s numerosity prerequisite requires that "the class is so numerous that joinder of all members is impracticable." "[A] plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (citations omitted). "A reasonable estimate is enough." *Bostwick v. SMH (US) Inc.*, 1998 WL 934642, at *3 (N.D. Ga. Oct. 30, 1998), *aff'd sub nom. Bostick v. SMH (US), Inc.*, 228 F.3d 413 (11th Cir.2000) (citing *Evans*). While there is no exact number to establish numerosity, the Eleventh Circuit has found that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal citation omitted). Accordingly, the

numerosity requirement is a "generally low hurdle." *Vega*, 564 F.3d at 1267. Even so, a plaintiff still has the burden to make "*some* showing" that the class meets the numerosity requirement. *Id.* The Eleventh Circuit has acknowledged that at least one court has recognized that when the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity because the court has the option to decertify pursuant to Rule 23(c)(1). *Evans*, 696 F.2d at 930.

Plaintiff estimates that the Inaccurate Disclosure class has at least 42 members, and the Overcharge Class has at least 112 members. In support, Plaintiff has advanced an affidavit executed by counsel, which describes the review undertaken of leases to date and attaches copies of the leases (ECF No. 105-11, Weil Decl.); and has identified additional leases in support of its reply (ECF No. 155, Reply at 17; *but see* ECF No. 168, Notice of Withdrawal of Evidence), and in its response to Defendant's notice of supplemental evidence (ECF No. 191, Response at 8).

Defendant does not dispute that the Overcharge Class meets the requirements for numerosity, and the undersigned finds that the evidence demonstrates sufficient class members to be numerous.

Defendant challenges the Inaccurate Disclosure Class on numerosity grounds. By Defendant's count, there are only eleven potential class members. Defendant reaches this estimate by limiting the potential class to claimants who, like Mr. Cox, entered single-payment leases, excluding all monthly leases, and those lease agreements that listed "N/A" for Net Trade-in Allowance. Defendant also avers that the class is limited to those leases entered within the CLA's one-year statute of limitations, and for lease amounts less than the applicable threshold amount. *See* 12 C.F.R. § Pt. 213, Supp. I, Section 213.2(e)(11).[3]

---

[3] "For purposes of § 213.2(e)(1), the threshold amount in effect during a particular period is the amount stated below for that period.

    i.    Prior to July 21, 2011, the threshold amount is $25,000.

The undersigned has reviewed the evidence adduced and is satisfied by Plaintiff's proof that the Inaccurate Disclosure class has at least 42 members that have been identified thus far. Defendant insists that consumers who executed monthly-payment leases are not capable of being in the class, but have not substantiated their explanation for their exclusion. Defendant has not demonstrated in either its response or at hearing that there is meaningful difference between single-payment leases and monthly leases, relying on the single unsupported statement in its opposition that the failures about which Plaintiff complain could only occur in a single-payment lease, because of the "unique" but unexplained characteristics of these leases.[4] At the hearing, Defendant attempted to illustrate the absence of monthly-lease holders in the class with evidence of 210 lease agreements that do not exhibit the alleged inaccurate disclosure. None of those 210 lease agreements, however, included a trade-in vehicle with positive equity. It is the absence of trade-in with positive equity that would preclude those leaseholders from class membership; the length of time they took to pay off the lease is, for those examples, irrelevant.

The undersigned also does not find that the statute of limitations is a barrier to class membership, as that is an affirmative defense that may be raised later on, but does not typically preclude class certification. *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 651 (S.D. Fla. 2015) ("Courts consistently hold, however, that the statute of limitations does not bar class

---

    ii.    From July 21, 2011 through December 31, 2011, the threshold amount is $50,000.
    iii.    From January 1, 2012 through December 31, 2012, the threshold amount is $51,800.
    iv.    From January 1, 2013 through December 31, 2013, the threshold amount is $53,000.
    v.    From January 1, 2014 through December 31, 2014, the threshold amount is $53,500.
    vi.    From January 1, 2015 through December 31, 2015, the threshold amount is $54,600.
    vii.    From January 1, 2016 through December 31, 2016, the threshold amount is $54,600.
    viii.    From January 1, 2017 through December 31, 2017, the threshold amount is $54,600.
    ix.    From January 1, 2018 through December 31, 2018, the threshold amount is $55,800."

[4] At the hearing, counsel described the meaningful and critical difference between a single and monthly lease as the consumer's election to pay a lower amount now or higher amount over time—essentially, a time-value of money argument. This election, and potential benefit to the consumer, has no apparent bearing on the complaint allegations that in either scenario, Porsche failed to fairly disclose the deal terms and injured the consumer.

certification, even when individual issues are certain to exist"). The undersigned finds from the evidence adduced that the proposed classes are sufficiently numerous for certification.

### C. Typicality

Rule 23(a)(3)'s typicality prerequisite requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The claims of the class members do not need to be identical to those of the class representative; rather, there must exist "a sufficient nexus ... between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (citing *Prado–Steiman v. Bush*, 221 F.3d 1266, 1278–79 (11th Cir. 2000)). This nexus exists if the claims of the class representative and the class members "arise from the same event or pattern or practice and are based on the same legal theory." *Id.* at 1217 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

For the Inaccurate Disclosure Class, Defendant contends that Plaintiff is atypical from the class because he was in fact aware that the $25,000 from his trade-in vehicle was disclosed as "cash" on his lease, and not applied as Net Trade-in Allowance. The Court has rejected Defendant's characterization of the disclosure on Mr. Cox's lease as accurate, as well as its reliance on his awareness of the inaccuracy, in its Order on Defendant's summary judgment motion. Defendant similarly argues with respect to the Overcharge Class that Plaintiff's knowledge that the dealer applied his $25,000 as cash to the single lease payment negates the deception required to sustain a FDUTPA claim. For the same reasons the Court rejected this fact as a barrier to his own claim, the undersigned rejects this as a distinction rendering his claim atypical of the class. Mr. Cox's claims are typical of the classes he seeks to represent.

### D. Adequacy of Representation

Rule 23(a)(4) requires adequacy of representation, stating that "the representative parties will fairly and adequately protect the interests of the class." In order to adequately represent a class, the named plaintiff must show that he possesses the "integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class." *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015). The adequacy of the class counsel is presumed, absent specific proof to the contrary. *Id.*

Plaintiff has provided sufficient evidence that he represents the interests of the classes and will not act in an antagonistic manner to the interests of the class members. Mr. Cox personally attended oral argument on both the motion for summary judgment and, a week later, the hearing on class certification. He is appropriately motivated to litigate the case on behalf of the class and no adverse interest has been raised. Plaintiff's counsel similarly is adequate to represent the interests of the classes, a conclusion that Defendant does not challenge.

Defendant has raised an argument against the adequacy of Plaintiff because he has not suffered the same wrongs as the other class members, which the Court has already analyzed and rejected under the typicality prong, *supra*. Accordingly, the undersigned finds that Plaintiff has demonstrated his adequacy to represent both classes.

### E. Commonality & Predominance

Rule 23(a)(2)'s commonality requirement demands "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As with numerosity, the Eleventh Circuit has described the commonality requirement as a "low hurdle" or a "light burden," as commonality "does not require that all questions of law and fact raised be common." *Williams v. Mohawk Indus., Inc.*,

568 F.3d 1350, 1356 (11th Cir. 2009); *Vega*, 564 F.3d at 1268. The Supreme Court has found that the commonality inquiry requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (internal citation omitted). Additionally, the court must take into account whether certification of the class will "generate common answers to drive the resolution of the litigation." *Id.* Even "a single common question" will suffice. *Id.* at 359.

Predominance, while similar to the commonality requirement under Rule 23(a)(2), is "far more demanding." *Vega*, 564 F.3d at 1270 (11th Cir. 2009) (internal citation omitted). Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of any individualized issues in resolving the claims of each class member. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). However, common issues will not predominate over individual questions if "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009). The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown v. SCI Funeral Servs. of Fla.*, 212 F.R.D. 602, 606 (S.D. Fla. 2003). To conduct this inquiry, the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action." *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

Defendant argues that individual issues predominate over common issues as to the Overcharge Class and its corresponding FDUTPA claim. The Court will address the claim by element. *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 696 (S.D. Fla. 2016). In order to state a

13

claim under FDUTPA, Plaintiff must establish: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Id.*

For the first FDUTPA element of a "deceptive act or unfair practice," the Eleventh Circuit has determined that "an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). Here, whether Porsche's approval of leases that fail to apply trade-in value as a capitalized cost reduction would deceive a reasonable consumer is a common question among class members, requiring a single determination as to whether Porsche's practices are deceptive or unfair under FDUTPA. Thus, this first FDUTPA element is amenable to classwide resolution.

For causation, a plaintiff "need not show actual reliance on the representation or omission at issue," because "the mental state of each class member is irrelevant." *Carriuolo*, 823 F.3d at 985. Courts in the Eleventh Circuit have determined that FDUTPA plaintiffs in a class action need not present individualized evidence that each potential class member was actually harmed by a defendant's conduct; the plaintiffs only need to show that a reasonable consumer would have been harmed by defendant's conduct, "an inquiry that lends itself more easily to class certification especially where, as here, defendant's conduct is the same as to all class members." *Bowe v. Pub. Storage*, 318 F.R.D. 160, 182 (S.D. Fla. 2015) (citing *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)). The *Bowe* court noted that cases where the court did require individualized inquiries to determine FDUTPA causation, and therefore defeated predominance, arose in the context where different representations were made to different class members, and where some class members were aware of the deceptive conduct. *See Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685 (S.D. Fla. 2008) (finding

14

predominance element not met because some class members had knowledge of alleged deceptive conduct); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 695–96 (S.D. Fla. 2014).

Defendant argues the similarity of this case to *Pop's Pancakes*, raising a hypothetical scenario in which a putative class member may have been fully advised, by a non-party dealer, all material terms including an explanation of how the application of her trade-in would impact the fees, charges, and taxes. In response, Plaintiff contends that this argument improperly introduces a "reliance" element into FDUTPA, which the Eleventh Circuit has rejected. *See Carriuolo*, 823 F.3d at 985.

The undersigned finds this case distinguishable from *Pop's Pancakes*. First, Defendant offered no evidence that this hypothetical circumstance ever occurred, for any putative class member. But more importantly, Defendant's conclusion that it would be necessary to discover the extent of such interaction between lessee and dealer, in order to determine liability against Porsche, is flawed. Plaintiff alleges, and indeed adduced competent evidence sufficient to overcome summary judgment, that the dealerships follow Porsche's guidelines with respect to the financing component of the deal. *See* ECF No. 190 at 22. Whether Porsche's practices caused the class members damages is a common question among class members.

Finally, the issue of damages under FDUTPA also predominates over individualized issues. The Eleventh Circuit has made clear that individual issues relating to damages do not defeat class certification. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).

Accordingly, common issues predominate over individual questions for both classes. The ultimate issue in this case is whether it was lawful for Porsche to enter into leases that failed to disclose net trade-in allowance and/or failed to apply net trade-in allowance as capitalized cost

15

reductions. A finding that Porsche has violated FDUTPA with respect to any one lease would apply equally to all leases fitting the class definition, eliminating the need for a lease-by-lease analysis. *See, e.g.*, *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 580 (M.D. Fla. 2006) (rejecting defense argument that individual issues predominated in TILA claims and granting class certification).

Finally, the undersigned rejects Defendant's contention that the voluntary payment doctrine requires individualized inquiry and proof to show whether the class member knew that they would not receive a capitalized cost reduction for their net trade-in, but entered into the lease in full knowledge of the circumstances. As discussed in the undersigned's Report and Recommendation on Defendants' Motion for Summary Judgment (ECF No. 190), the voluntary payment doctrine states that "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal." *Sanchez v. Time Warner, Inc.*, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998) (quoting *McMullen v. Inland Realty Corp.*, 152 So. 740, 742 (Fla. 1933)). "It does not matter that the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances." *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000).

Defendant contends that whether the voluntary payment doctrine applies as an affirmative defense to FDUTPA for each class member is an individualized issue that bars a finding of predominance. As noted above, affirmative defenses "rarely predominate where a common course of conduct is established." *See In re Checking Account Overdraft Litig.*, 307 F.R.D. at 646. Defendant bears the burden of showing that the voluntary payment affirmative

defense applies to some members but not others. *See Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2016 WL 7477734, at *4 (S.D. Fla. Dec. 8, 2016). Defendant has not met this burden, and indeed has not proffered any record evidence that of any proposed class member who had knowledge that the lack of a capitalized cost reduction would increase their rent charge and taxes. Accordingly, the undersigned rejects this argument.

Minimal individualized issues have been identified. The questions at issue – particularly (1) whether Porsche violated the CLA for its role in approving and effecting leases that fail to disclose net trade-in allowance; and (2) whether Porsche's practice of approving leases that do not apply net trade-in allowance as a capitalized cost reduction violates FDUTPA – are common ones that predominate over individual questions. Accordingly, the undersigned finds that both classes have met the predominance requirement.

**F.      Superiority**

Superiority refers to whether the class action lawsuit is the best method for fairly and efficiently adjudicating the controversy. Rule 23(b)(3) lists matters pertinent to this findings: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Defendant's primary argument against superiority is that the Inaccurate Disclosure Class's CLA claim is premised on a technical, "bare procedural" violation that precludes certification. This argument appears misplaced, as it does not relate to whether the class action is the superior means for adjudicating the class member's claims. Notwithstanding, the undersigned

has addressed this argument in its Report and Recommendation on Defendants' Motion for Summary Judgment, finding that Plaintiff's alleged injury constituted a concrete injury that satisfies the injury-in-fact requirement. *See* ECF No. 190 at 13.

As to the matters enumerated in Rule 23(b)(3), the undersigned does not find that there is any evidence that any of the class members have any interest in individually controlling a separate action for claims under the CLA or FDUTPA. Indeed, the undersigned knows of no other case filed in Florida under these claims. The undersigned also finds that the Southern District of Florida is a desirable forum for this lawsuit, and does not anticipate any difficulties in managing the class action. Accordingly, the Court finds that the classes meet the superiority requirement of Rule 23(b)(3).

### G.  Declaratory/Injunctive Relief

Finally, Plaintiff also seeks certification of the two classes under Rule 23(b)(2), which finds that a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Plaintiff seeks class-wide injunctive relief for Porsche to halt its practice of accepting leases that fail to disclose net trade-in allowance and fail to reduce the capitalized cost by net trade-in allowance. Should the Court grant this injunctive relief, it would apply to every class member of both classes. Defendant contests this on the grounds that the CLA does not provide for injunctive relief, which Plaintiff does not contest. However, Plaintiff argues that an injunction may be granted for the Inaccurate Disclosure Class under its *per se* violation of FDUTPA count for a CLA violation. Accordingly, Plaintiff is seeking injunctive relief for both classes under FDUTPA, which finds that "anyone aggrieved by a violation of this part may bring an action to

obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211.

Defendant argues that Plaintiff and other class members do not have standing to seek injunctive relief because they are not in imminent danger of being harmed again, as they are not likely to enter into a new lease with a Porsche dealer. Plaintiff correctly points out that FDUTPA grants parties standing for injunctive relief for anyone who has already been harmed under FDUTPA. *See, e.g., Galstaldi v. Sunvest Communities USA, LLC,* 637 F. Supp. 2d 1045, 1057-58 (S.D. Fla. 2009) ("Any person aggrieved by a violation of the FDUTPA may seek declaratory and/or injunctive relief under the statute. There is no requirement that a plaintiff show an ongoing practice or irreparable harm . . . ."); *Jeff Enterprises, Inc. v. Home Depot U.S.A., Inc.*, 2008 WL 11402017, at *7 (S.D. Fla. Mar. 10, 2008) (harmed plaintiff "has standing . . . to seek injunctive or declaratory relief, whether or not it is likely to suffer future harm").

Accordingly, the undersigned finds that certification of both the Inaccurate Disclosure Class and the Overcharge Class are amendable for certification under Rule 23(b)(2).

## IV. CONCLUSION

For the foregoing reasons, the undersigned **REPORTS AND RECOMMENDS** that Plaintiff's Motion for Class Certification (ECF No. 104) be **GRANTED.** The Court should certify the following classes under Rule 23(b)(3) and Rule 23(b)(2):

> **Inaccurate Disclosure Class**: Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendants and, as part of the transaction, traded in a vehicle with a positive monetary value that was not assigned a positive Net Trade-in Allowance. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.
>
> **Overcharge Class**: Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendant and, as part of the transaction, traded in a vehicle with a positive monetary value that was not

properly credited as a Capitalized Cost Reduction. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Darren P. Gayles, United States District Judge. Failure to timely file objections shall bar the Parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** this 9th day of November, 2018.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE