UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23409-CIV-GAYLES/LOUIS

**STEVEN MICHAEL COX, individually
and on behalf of those similarly situated,**

    **Plaintiff,**

v.

**PORSCHE FINANCIAL SERVICES, INC.,**

    **Defendant.**

                      /

## ORDER

**THIS CAUSE** comes before the Court on the parties' cross-motions for partial summary judgment [ECF Nos. 225 & 241] (collectively, the "Motions"). The Court heard argument on the Motions on January 29, 2020. [ECF No. 258]. The Court has reviewed the Motions and the record and is otherwise fully advised. For the reasons that follow, the Motions are each granted in part and denied in part.

**I. BACKGROUND**

 **A. Factual**[1]

This action stems from a 2015 lease transaction that Plaintiff Steven Michael Cox completed with a non-party dealer, Porsche of Fort Myers (the "Dealer"). The Dealer agreed to

---

[1] The facts relevant to the Motions are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: Plaintiff's Response to Defendant's Statement of Facts in Opposition to Defendant's First Motion for Summary Judgment [ECF No. 135], Plaintiff's Statement of Undisputed Material Facts in Support of his Amended Motion for Partial Summary Judgment [ECF No. 241-2] ("Pl.'s SUMF"), and Defendant's Statement of Disputed Material Facts in Opposition to Plaintiff's Motion [ECF No. 245] ("Def.'s SMF").

give Plaintiff $25,000 for his 2015 Hyundai Genesis and then agreed to apply that trade-in value to Plaintiff's lease transaction for a 2015 Porsche Cayman. [Pl.'s SUMF, ¶¶ 12, 18]. Plaintiff took the deal and executed with the Dealer a single-payment lease[2] for $36,539.30 due at lease signing. [*Id.*, ¶ 18]. Plaintiff paid with a check for $11,539.30 and with the $25,000 credit for his trade-in. [*Id.*].

Plaintiff's lease agreement included a section titled "Trade-in Vehicle," which is used to show that a vehicle is being traded in as part of a lease agreement. [*Id.*, ¶ 25].[3] The Dealer listed Plaintiff's 2015 Hyundai Genesis under "Trade-in Vehicle" on his lease form. [*Id.*, ¶ 24]. Plaintiff's lease agreement also included a section titled "Net Trade-In Allowance" (the "NTIA"), which represents the gross agreed-upon value of a trade-in less the balance owed on the trade-in. [*Id.*, ¶ 6]. The Dealer assigned Plaintiff's trade-in a gross value of $25,000. [*Id.*, ¶ 27]. Plaintiff owed no balance on the trade. [*Id.*]. However, under the NTIA section of Plaintiff's lease, the Dealer stated "N/A" to mean "not applicable." [*Id.*].

Among other things, the NTIA is used to determine the "Capitalized Cost Reduction" (the "CCR"), which represents "the amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost[4]." [*Id.*, ¶ 31]. Dealers may apply a CCR to a lease to reduce the "Adjusted Capitalized Cost," which may reduce other lease terms, such as the interest ("rent charge") and taxes paid on the lease. [*Id.*, ¶¶ 31–32; Def.'s SMF, ¶¶ 31–32]. Under the CCR section of Plaintiff's lease, the Dealer again stated "N/A." [Pl.'s SUMF, ¶ 31].

---

[2] By completing a single-payment lease, Plaintiff paid the total payment for the lease up front in exchange for more favorable financing terms rather than making periodic payments over the course of the lease's life.

[3] Though Defendant indicates that this statement is disputed, *see* [Def.'s SMF, ¶ 25], it only disputes Plaintiff's characterization of the "lease agreement" as a "lease transaction."

[4] The Gross Capitalized Cost is the agreed-upon value of the leased vehicle increased by the dealer's acquisition fee and the dealer's documentation fee. [Pl.'s SUMF, ¶ 30]. Plaintiff's Gross Capitalized Cost was $64,935.00. [*Id.*].

2

When Plaintiff noticed that his lease form indicated "N/A" under the NTIA section, he asked the Dealer where the credit for his trade-in was. [*Id.*, ¶ 19]. The Dealer pointed to the section showing Plaintiff's total due at signing: $36,539.30. [Cox Dep., ECF No. 241-8 at 83:13–14]. Satisfied, Plaintiff signed the lease form and left the dealership with his 2015 Porsche Cayman and no money owed to the Dealer. [*Id.*, at 84:1–3; 86:1–4]. Weeks later, Plaintiff reviewed the lease with his neighbor, a former car dealer, who told Plaintiff that his rent charge was "extremely high." [*Id.*, at 95:3–96:19]. After later consulting an attorney, Plaintiff came to believe that the Dealer overcharged him $3,970.93 in interest and sales tax by failing to apply his trade-in as a CCR. [Pl.'s SUMF, ¶ 39].

Defendant Porsche Financial Services, Inc., generates and provides to the Dealer lease agreement forms that Defendant guarantees "comply with Federal law and the law of the state where the Dealer is located," if completed accurately. [*Id.*, ¶¶ 3, 4]. Defendant also reviews every lease that the Dealer executes through a two-step process: (1) credit underwriting and (2) contract processing. [*Id.*, ¶ 9]. Credit underwriting involves Defendant running a lease applicant's credit to determine whether it will accept the risk of lending to the applicant. [*Id.*]. Contract processing means that once Defendant approves the applicant's credit and the Dealer and the applicant execute a lease agreement, Defendant reviews the lease agreement to, among other things, ensure that the lease is compliant with the Truth-in-Lending Act. [*Id.*, ¶¶ 10–11]. If Defendant decides to purchase the lease, then the lease is assigned to Porsche Leasing Ltd.,[5] and serviced by Defendant. [*Id.*, ¶ 8; Def.'s SMF, ¶¶ 8–9]. Relevant here, Defendant provided to the Dealer the lease agreement that

---

[5] Plaintiff states that it is undisputed that the Dealer is required to assign completed lease forms to Defendant, not Porsche Leasing Ltd., but he cites to record evidence demonstrating that the lease agreements require the Dealer to assign leases to *either* Porsche Leasing Ltd., or Defendant. *See* [Pl.'s SUMF, ¶ 8 (citing Supena Dep., ECF No. 241-10, 45:18–46:1)]. And Defendant's form leases state that leases "will be assigned to Porsche Leasing Ltd., or an assignee designated by Porsche Leasing Ltd." [ECF No. 241-5].

Plaintiff completed, approved Plaintiff's credit application, reviewed Plaintiff's executed lease agreement for compliance with the Truth-in-Lending Act, and currently services Plaintiff's lease. [Pl.'s SUMF, ¶¶ 16, 17, 20, 21].

**B. Procedural**

On August 8, 2016, Plaintiff filed this class action[6] under both federal question and diversity jurisdiction against Defendants (1) Porsche Cars North America, Inc., (2) Porsche Leasing Ltd., and (3) Porsche Financial Services, Inc., alleging nine counts[7]: (1) Consumer Leasing Act ("CLA") and Regulation M violations, (2) *per se* violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") based on CLA and Regulation M violations, (3) FDUTPA violation based on the Dealer's failure to disclose how the NTIA was applied, (4) FDUTPA violation based on the Dealer's failure to apply the NTIA to reduce the CCR, (5) breach of contract, (6) breach of covenant of good faith and fair dealing, (7) negligent training and supervision (only against Defendant Porsche Cars North America, Inc.), (8) unjust enrichment, and (9) negligence. [ECF

---

[6] On February 14, 2019, the Court affirmed and adopted Judge Louis' Report and Recommendation, [ECF No. 203], granting class certification of Plaintiff's two proposed classes under Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2). [ECF No. 216 at 2]. The Court certified Plaintiff's Inaccurate Disclosure Class as:

> Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendants and, as part of the transaction, traded in a vehicle with a positive monetary value that was not assigned a positive Net Trade-in Allowance. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.

The Court also certified Plaintiff's Overcharge Class as:

> Persons who leased a Porsche vehicle in Florida through the standard form Motor Vehicle Lease Agreement from Defendants and, as part of the transaction, traded in a vehicle with a positive monetary value that was not properly credited as a Capitalized Cost Reduction. This Class only covers individuals whose leases either are outstanding or were terminated within four years before the filing of this action.

[7] Plaintiff alleged all counts against all Defendants unless otherwise stated.

4

No. 1]. In his Complaint, Plaintiff sought damages and declaratory and injunctive relief enjoining Defendants from "continuing to violate federal and Florida law relative to the unlawful treatment of a consumer's [NTIA] and the imposition and collection of sales taxes." [*Id.* at 39].

On November 28, 2017, all Defendants jointly filed their Motion for Summary Judgment ("Joint Motion"). [ECF No. 109]. On October 19, 2018, the Court affirmed and adopted Judge Louis' Report and Recommendation (the "Report") [ECF No. 190] granting in part and denying in part Defendants' Joint Motion, leaving only Counts 1–4 against remaining Defendant, Porsche Financial Services, Inc. [ECF No. 202].

On August 1, 2019, Defendant filed a Motion for Partial Summary Judgment ("Defendant's Motion") on two issues[8]: (1) whether Florida law permits private parties to pursue civil penalties under FDUTPA and (2) whether the Court has subject matter jurisdiction to hear Plaintiff's claims. [ECF No. 225]. On August 30, 2019, Plaintiff filed his Amended Motion for Partial Summary Judgment ("Plaintiff's Motion"), arguing that summary judgment is warranted in his favor as to (1) all elements of his FDUTPA claim under Count 4[9], (2) Defendant's affirmative defense under Florida Statute § 213.756, and (3) Defendant's affirmative defense under the voluntary payment doctrine. [ECF No. 241].

---

[8] In its Order denying Plaintiff's Motion to Strike Defendant's Motion [ECF No. 229], the Court noted that Defendant's third issue as to the application of the statute of limitations under the CLA is moot because Plaintiff's counsel conceded that they will not pursue class claims for members that fall outside the limitations period. [ECF No. 239].

[9] In his Motion, Plaintiff moves for summary judgment as to "all elements of his FDUTPA claim," but he fails to specify to which FDUTPA Count he refers. [ECF No. 241-1 at 7]. Plaintiff elaborates: "Plaintiff's lease calculation is an unfair and deceptive trade practice because it violates Florida sales tax statutes and regulations that require the capitalized cost of the lease to be reduced by the amount credited for the trade-in vehicle." [ECF No. 241-1 at 11]. The Court therefore construes Plaintiff's Motion to be requesting summary judgment only as to Count 4, which alleges that Defendants "[e]stablish[ed] a uniform pattern, policy, and practice of failing to apply the [NTIA] as a [CCR] in their customers' leases." [ECF No. 1, ¶ 146].

## II. LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its be-half." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Further, conclusory and uncorroborated allegations by a party in an affidavit or deposition will not create an issue of fact for trial sufficient

to defeat a well-supported summary judgment motion. *See Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). "A district court's disposition of cross-motions for summary judgment employs the same legal standards applied when only one party files a motion." *Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015) (citation omitted).

## III. DISCUSSION

### A. Defendant's Motion for Partial Summary Judgment

#### 1. *Subject Matter Jurisdiction*

The Court has jurisdiction to hear Plaintiff's claims. Defendant's first argument that the Court lacks jurisdiction based on the Tax Injunction Act, 28 U.S.C. § 1341, fails. The Tax Injunction Act bars the exercise of federal jurisdiction when two conditions are met: "(1) the relief requested by the plaintiff will enjoin, suspend, or restrain a state tax assessment and (2) the state affords the plaintiff a plain, speedy and efficient remedy." *Terry v. Crawford*, 615 F. App'x 629, 630 (11th Cir. 2015) (citation omitted). Here, Plaintiff does not seek to enjoin, suspend, or restrain Defendant from charging tax. Rather, he seeks to enjoin Defendant from engaging in conduct that violates FDUTPA. [ECF No. 1 at 39]. And the record evidence does not demonstrate that such alleged conduct includes tax assessments. Accordingly, the Tax Injunction Act does not divest the Court of its jurisdiction. *See Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1252 (S.D. Fla. 2018) (denying motion to dismiss based on Tax Injunction Act because plaintiff "d[id] not seek a court order enjoining, suspending, or restraining the assessment of any tax under State law").

Defendant also argues that the Court lacks jurisdiction because Plaintiff failed to exhaust his administrative remedies under Florida Statute § 215.26(4), which provides the "exclusive procedure and remedy for refund claims between individual funds and accounts in the State

7

Treasury." Defendant argues that Florida Administrative Code Rule 12A-1.014 sets forth this "exclusive procedure" and requires a "taxpayer who has overpaid tax to a dealer" to "secure a refund of the tax from the dealer and not from the [Florida] Department of Revenue." Defendant further submits that if the dealer declines to provide the taxpayer a refund, she must request from the dealer an assignment of her tax refund rights before contesting the tax assessment in court. *See* Technical Assistance Advisement 2004(A)-005, 2004 WL 474023, at *4 (Fla. Dep't of Rev. Feb. 2, 2004) ("dealer may issue an assignment of rights to his/her customer in lieu of a refund").

First, Florida Statute § 215.26(4) is inapplicable here because Plaintiff does not seek a tax refund; he seeks, among other things, actual damages that include alleged overcharges for interest and fees on his lease. [ECF No. 1 at 39]. Defendant cites no, and the Court is unaware of, authority stating that a plaintiff who is not seeking a tax refund must exhaust administrative remedies under § 215.26(4). Even so, that a "dealer may issue an assignment of rights to his/her customer in lieu of a refund[,]" does not demand Plaintiff to have sought such assignment before bringing suit. *See* Technical Assistance Advisement 2004(A)-005. Accordingly, the Court has jurisdiction.[10]

### 2. Civil Penalties Under FDUTPA

The Court finds that summary judgment is warranted with respect to Defendant's argument that Plaintiff is unable to pursue civil penalties, in addition to damages, under FDUTPA. Florida Statute § 501.2075 provides that that civil penalties under FDUTPA "may be recovered in any action brought under this part by the *enforcing authority*." Fla. Stat. § 501.2075 (emphasis added). The statute defines an "enforcing authority" as "the office of the state attorney if a violation of this part occurs in or affects the judicial circuit under the office's jurisdiction" or the "Department of

---

[10] Defendant also argues that Florida Statute § 213.756 strips the Court of jurisdiction. Not so. As discussed *infra*, the Court finds that the statute is inapplicable to Plaintiff's claims.

Legal Affairs if the violation occurs in or affects more than one judicial circuit or if the office of the state attorney defers to the department in writing or fails to act upon a violation within 90 days after a written complaint has been filed with the state attorney." *Id.* § 501.202(2). As Plaintiff is not an enforcing authority under the statute, the Court grants summary judgment in favor of Defendant as to Plaintiff's claim for civil penalties pursuant to FDUTPA.

### B. Plaintiff's Motion for Partial Summary Judgment

#### 1. Plaintiff's FDUTPA Claims

The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (citing Fla. Stat. § 501.202(2)). A FDUTPA claim has three elements: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citation omitted). A plaintiff can satisfy FDUTPA's first element by establishing a traditional FDUTPA violation or a *per se* FDUTPA violation.

Traditional FDUTPA violations occur when a defendant engages in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "Deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. This standard requires a showing of probable, not possible, deception[.]" *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citations and internal quotations omitted). This is an objective test; a plaintiff need not prove reliance. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). In determining deception, a court must view the relevant acts "in light of the circumstances

9

as a whole." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009). An unfair trade practice is one that "offends established public policy; it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (citation omitted).[11] Whether conduct is deceptive or unfair is a question of fact. *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009) (citation omitted).

A defendant *per se* violates FDUTPA in one of two ways: (1) if the law, statute, rule, regulation, or ordinance "expressly constitutes a violation of FDUTPA" or (2) if the law, statute, rule, regulation, or ordinance "proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) (citing Fla. Stat. § 501.203(3)(c)). When a law operates as an implied FDUTPA predicate, a plaintiff need only demonstrate a violation of the law. *See e.g.*, *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5d DCA 2008) (denying motion to dismiss where defendants' alleged acts were considered unfair and deceptive trade practices under Federal Trade Commission Act).

If a defendant violates a rule that does not operate as an implied FDUTPA predicate, a court must independently analyze whether the defendant's conduct is unfair or deceptive under traditional FDUTPA standards. *See e.g.*, *Webber v. Bactes Imaging Sols., Inc.*, No. 2D18-2964, 2020 WL 215819, at *2 (Fla. 2d DCA Jan. 15, 2020) (holding overcharging patients for medical

---

[11] The Court notes that the definition of "unfair" under FDUTPA is not well-settled in this District. *Compare Deere Constr., LLC*, 198 F. Supp. 3d at 1338, *with Martorella v. Deutsche Bank Nat'l Tr. Co.*, No. 12-80372-CIV, 2015 WL 11347664, at *5 (S.D. Fla. Aug. 6, 2015) (citing *Porsche Cars N. Amer., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014)) (an "unfair practice requires that the injury to the consumer: (1) must be substantial; (2) must not be outweighed by any countervailing benefits to consumers or competition; and (3) must be an injury that consumers themselves could not reasonably have avoided"). The Court need not weigh in on the dispute for purposes of this Order because its ruling stands under either definition.

records in violation of Florida Administrative Code Rule 64B8 was an unfair practice because such conduct "frustrates patient access to medical records"). In both traditional and *per se* FDUTPA violations, a defendant is liable if he "directly participated" in violative acts, even if he did not initiate—nor was the principle actor in—the violations. *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009); *see KC Leisure, Inc.*, 972 So. 2d at 1074 (discussing when corporate officers may be held liable for corporations' deceptive practices).

Plaintiff argues that Defendant committed two traditional FDUTPA violations by (1) using a lease calculation that violates Florida tax law[12] and (2) reviewing, accepting, and approving such an unlawful calculation. As discussed below, summary judgment is unwarranted as to both bases.

First, Plaintiff claims that Defendant violated FDUTPA by directly participating in Plaintiff's unlawful lease calculation because Defendant "determine[d] the monthly or single payment amount." [Pl.'s SUMF, ¶ 30]. Plaintiff only cites to his lease for support, but the lease nowhere indicates that Defendant made this calculation. [ECF No. 135-2]. To counter, Defendant presented evidence that the Dealer, not Defendant, determines this calculation by "negotiat[ing] sales and leases with its customers." [Harris Dep., ECF No. 109-7, ¶ 3]. Non-conclusory statements such as these can defeat summary judgment when based on personal knowledge or observation. *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). However, because genuine issues of material fact remain as to whether Defendant "directly participated" in Plaintiff's lease calculation, *Galstaldi*, 637 F. Supp. 2d at 1056, the Court denies Plaintiff summary judgment as to this claim.

---

[12] Though Plaintiff bases this argument on a Florida tax law violation, the Court does not construe Plaintiff to be arguing that Defendant *per se* violated FDUTPA because Plaintiff based his *per se* FDUTPA claim (Count 2 of his Complaint) on Defendant's alleged violations of the CLA and Regulation M, not Florida tax law. [ECF No. 1 at 28: 121]. *See Thomas v. Egan,* 1 F. App'x 52, 54 (2d Cir. 2001) (citing Fed. R. Civ. P. 8(a)) ("a claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim"). Additionally, the Court notes that because a genuine factual dispute remains as to Defendant's participation in Plaintiff's lease calculation, discussed *infra*, it need not determine whether the calculation was lawful.

Second, Plaintiff claims that Defendant's review, acceptance, and approval of his unlawful lease calculation "offends public policy" and is, therefore, an unfair trade practice under FDUTPA. [ECF No. 241-1 at 16]. But Plaintiff fails to offer evidence to support this argument, and "district court judges are not required to ferret out delectable facts buried in a massive record." *Chavez v. Sec'y Florida Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). Furthermore, whether conduct constitutes an unfair trade practice is a question of fact for the jury to decide. *Siever*, 669 F. Supp. 2d at 1293. Accordingly, the Court denies summary judgment as to Plaintiff's FDUTPA claim.[13]

### 2. *Defendant's Affirmative Defenses*

The Court grants Plaintiff summary judgment with respect to Defendant's affirmative defense based on Florida Statute § 213.756. The statute reads:

> In any action by a purchaser *against a retailer, dealer, or vendor* to obtain a *refund* of or to otherwise recover taxes, fees, or surcharges collected by the retailer, dealer, or vendor from the purchaser . . . It is an affirmative defense to the action when the retailer, dealer, or vendor remitted the amount collected from the purchaser to the appropriate taxing authority, less any discount or collection allowance authorized by law.

Fla. Stat. § 213.756. (emphasis added). Plaintiff correctly submits that the statute is inapplicable where, as is the case here, the action is not against a retailer, dealer, or vendor, and the plaintiff does not seek a tax refund. Summary judgment is warranted in Plaintiff's favor as to this defense.

However, the Court denies Plaintiff summary judgment as to Defendant's voluntary payment doctrine defense. Under the common law voluntary payment doctrine, "money voluntarily paid under a claim of right, with full knowledge of the material facts, cannot be

---

[13] The Court declines to grant summary judgment as to only some elements of Plaintiff's FDUTPA claim. *See e.g.*, *Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F. Supp. 3d 1295, 1313 (M.D. Fla. 2017) (denying summary judgment as to FDUTPA claim without addressing FDUTPA's causation and damages elements because plaintiff failed to offer evidence of defendant's deceptive conduct).

recovered merely because the paying party, at the time of the payment, mistook the law as to his liability to pay." *Schojan v. Papa John's Int'l Inc.*, 34 F. Supp. 3d 1206, 1210 (M.D. Fla. 2014). The party asserting the defense must "show that the person who made the payment had full knowledge of the relevant facts, including allegedly wrongful conduct." *Carrero v. LVNV Funding, LLC*, No. 11-62439-CIV, 2014 WL 6433214, at *6 (S.D. Fla. Oct. 27, 2014). As Plaintiff has provided no evidence that the circumstances have changed since the Court affirmed Judge Louis' Report, which found that "there is a genuine dispute whether Plaintiff entered into the lease deal with knowledge of the factual circumstances[,]" [ECF No. 190 at 25], the Court denies Plaintiff's request for summary judgment as to the voluntary payment doctrine.

IV. **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Partial Summary Judgment [ECF No. 225] is **GRANTED** as to civil penalties being unavailable to Plaintiff under FDUTPA and **DENIED** as to its argument that the Court lacks subject matter jurisdiction to hear Plaintiff's claims; and

2. Plaintiff's Motion for Partial Summary Judgment [ECF No. 241] is **GRANTED** as to Defendant's affirmative defense under Florida Statute § 213.756 and **DENIED** as to both (1) his FDUTPA claim and as to (2) Defendant's additional affirmative defense under the voluntary payment doctrine.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of February, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE